Chandler v. State 









WITHDRAWN






IN THE
TENTH COURT OF APPEALS
 

No. 10-91-120-CR
No. 10-91-121-CR

Â Â Â Â Â JAMES ELLIS CHANDLER,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court Nos. 18,251 & 18,252
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Juries convicted James Chandler in separate trials of aggravated robbery and robbery and
assessed him a life sentence for each offense. His appeals are consolidated for disposition as they
each assert essentially the same complaints. Chandler complains about a "tainted" in-court
identification, the admission of testimony relating to a prior conviction, the admission of an
extraneous offense during the guilt phase and evidence of unadjudicated offenses at the punishment
stage, the denial of a continuance, and the charge on the burden of proof. We will remand for a
new punishment hearing in one cause and reverse and remand for a new trial in the other.
Â Â Â Â Â Â The grand jury indicted Chandler for the armed robbery of a One Stop Grocery store clerk
that occurred on September 21, 1990, and for the September 25 armed robbery of the clerk of the
Corner Store. Both crimes occurred in Waxahachie. Each indictment also alleged two prior
felony convictions for enhancement: possession of a controlled substance and murder. Chandler
was convicted of robbery for the September 25 offense and aggravated robbery for the September
21 crime. The juries that convicted him assessed a life sentence in each trial.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â IDENTIFICATION
Â Â Â Â Â Â Kathy DeFore and Betty Wade, the victims of the two robberies, both identified Chandler in
a photo array and in a "live" lineup. Following a suppression hearing, the court later ruled that
the lineup identification was inadmissible. However, DeFore and Wade made an in-court
identification of Chandler as the person who robbed them. Each testified that their in-court
identification was based solely on having observed him during the robbery and was not affected
by either the pretrial photo array or lineup.
Â Â Â Â Â Â In his first common points, Chandler asserts that the court erred in allowing the robbery
victims to make an in-court identification of him over his objection. He argues that DeFore's and
Wade's identifications were tainted by the inadmissible lineup because, after identifying him in
such a lineup, they would base their in-court identifications on the lineup rather than on an
independent identification of him at the time of the offense. Their descriptions of the robber were
flawed, he says, because they were in a state of excitement during the robberies and because the
robbery episodes only lasted for 30 seconds. He points out that the victims never mentioned the
tear-drop tattoo near his eye and described him as being shorter and thinner than he really is. 
Â Â Â Â Â Â The State counters these arguments, however, by pointing out that DeFore and Wade
accurately describe Chandler by hair length, glasses, baseball cap, and unshaven appearance, that
they never identified any person other than him as the robber, that they each had adequate time
under good lighting conditions to observe him up close during the offense, and that they identified
him in a photo array only two or three days after the robberies took place.
Â Â Â Â Â Â A court should consider several factors when determining the admissibility of in-court
identifications when an inadmissible out-of-court identification has occurred: (1) the witness's
prior opportunity to observe the alleged criminal act; (2) whether there is a discrepancy between
any pre-lineup description of the criminal and the defendant's actual description; (3) any
identification of the defendant prior to the lineup by another person; (4) the identification by
picture of the defendant prior to the lineup; (5) failure to identify the defendant on a prior
occasion; and (6) the lapse of time between the alleged act and the lineup identification. United
States v. Wade, 388 U.S. 218, 241, 87 S.Ct. 1926, 1940 (1967). The Court in Wade noted the
probability that, once the accused is identified from an inadmissible out-of-court identification, the
identifying witness is unlikely to go back on his word in making an in-court identification. Id.,
388 U.S. at 229, 87 S.Ct. at 1940. However, even if the pretrial identification is inadmissible,
that does not make the in-court identification inadmissible per se. Id. 388 U.S. at 240 n. 32, 87
S.Ct. at 1939 n.32.
Â Â Â Â Â Â "A defendant who contends on appeal that a trial court erred in allowing an in-court
identification of him by a complaining witness has a difficult and heavy burden to sustain, for
unless it shows by clear and convincing evidence that a complaining witness' in-court identification
of a defendant as the assailant was tainted by improper pre-trial identification procedures and
confrontations, the in-court identification is always admissible." Jackson v. State, 628 S.W.2d
446, 448 (Tex. Crim. App. 1982).Â Â Â Â Â Â Â Considering all the evidence, Chandler has failed to meet
his burden of showing by clear and convincing evidence that the in-court identifications were
tainted by improper pre-trial identification procedures. Point one is overruled in each cause.
Â Â Â Â Â Â Chandler asserts in each of his second points that the court erred in overruling his objection
to evidence of a pretrial photographic identification and in admitting the in-court identifications. 
He argues that the in-court identification was tainted by the photographic identification.
Â Â Â Â Â Â On the day of the robberies, the victims were shown a photo array of five or six males, but
they could not make an identification of the robber. A few days later, however, the victims picked
Chandler's photo out of a second array of five to six males. Chandler contends the second array
was impermissibly suggestive because his photo stood out as having a different background and
because it obviously appeared to be a jail "mugshot." The State argues, however, that any
differences in the photographs were minimal and that all photographs were of white males of
Chandler's approximate age.Â 
Â Â Â Â Â Â A two-step analysis is used to determine the admissibility of an in-court identification based
on a photographic identification. First, the trial court must determine whether the pretrial
procedure is impermissibly suggestive. Herrera v. Collins, 904 F.2d 944, 946 (5th Cir. 1990). 
Second, it must determine from the totality of the circumstances whether the suggestiveness, if
any, leads to a substantial likelihood of irreparable misidentification. Id. Thus, a conviction
based on an in-court identification following a suggestive pretrial photographic identification will
be set aside only if the nature of the photographic identification procedure gives rise to a very
substantial likelihood of irreparable misidentification. Id. at 384. Once an out-of-court procedure
is determined to be impermissibly suggestive, the court is to consider the Wade factors to
determine if this suggestiveness leads to a substantial probability of irreparable misidentification. 
Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 381-82, 34 L.Ed.2d 401 (1972).
Â Â Â Â Â Â The photographic array that Chandler attacks as impermissibly suggestive contains pictures
of virtually the same size, with the subjects in similar poses, and none with striking differences
in personal appearance, dress or age. The officer presenting the photo array and the victims all
testified that the officer did not attempt to influence the identification of Chandler from the array. 
Based on the evidence, the court could have reasonably found that Chandler's photo and the array
were not so impermissibly suggestive as to lead to a very substantial likelihood of an in-court
misidentification. Accordingly, we cannot say that the court abused its discretion when it admitted
the in-court identifications. Both second points are overruled.
UNADJUDICATED ACTS
Â Â Â Â Â Â The indictment charging Chandler with the September 25 robbery went to trial first. Betty
Wade, the victim in the September 25 offense, identified Chandler as the robber during the guilt-innocence stage. Kathy DeFore, the victim of the September 21 robbery, testified over defense
objections during the punishment phase that Chandler also robbed her on September 21, describing
the details of the prior robbery. Of course, Chandler's guilt for the September 21 robbery had not
yet been adjudicated. Over Chandler's objection, the court also allowed Wanda Thompson, whom
Chandler had robbed in Anderson County on September 24, 1990, to identify him as the robber
and to relate the details of that offense. Thompson said she was afraid that Chandler was going
to kill her in the September 24 robbery. The Anderson County offense had not yet been tried and
thus also was unadjudicated. 
Â Â Â Â Â Â In the separate trial for the September 21 robbery, Kathy DeFore testified on guilt that
Chandler robbed her on that date. Over an extraneous-offense objection, the court also allowed
Betty Wade to testify during the guilt phase that Chandler had robbed her on September 25. Wade
described the details of that offense. Chandler's conviction for the September 25 robbery was
being appealed when the second case was tried, and thus his guilt for the September 25 offense
was not yet finally adjudicated.
Â Â Â Â Â Â In common third points, Chandler contends the court erred in admitting evidence of
unadjudicated offenses during punishment. Unadjudicated acts of misconduct are not admissible
during the punishment phase of non-capital offenses. Grunsfeld v. State, No. 1037-91, slip op.
at 2 (Tex. Crim. App. October 28, 1992); Blackwell v. State, 818 S.W.2d 134 (Tex. App.âWaco
1992). Therefore, the court erred when it allowed DeFore and Thompson to testify in the trial of
the September 25 robbery about two prior robberies, both of which were then unadjudicated acts
of misconduct on Chandler's part.
Â Â Â Â Â Â Wade, the victim in the September 25 robbery, testified during the second trial for the
September 21 robbery, but her testimony was admitted during the guilt-innocence phase. Chandler
correctly cites to the statement of facts of the guilt stage where his objection is located and Wade's
testimony is reflected, but he frames his point of error as a complaint that Wade's testimony was
improperly admitted on punishment. We will treat his point substantively as alleging error in
admitting Wade's testimony on guilt, which is consistent with references to the record and the
substance of the argument under the point. See Tex. R. App. P. 74(d), (p).
Â Â Â Â Â Â Extraneous offenses, whether or not finally adjudicated, are inadmissible on guilt unless they
have a relevancy apart from purportedly showing the propensity of the defendant to act in
conformity with a particular character trait. Tex. R. Crim. Evid. 404(a), (b); Mayes v. State, 816
S.W.2d 79, 86 (Tex. Crim. App. 1991). Evidence that Chandler had committed the September
25 robbery had no relevancy apart from showing his propensity to commit armed robberies. Thus,
the court erred when it allowed Wade to testify about Chandler's having robbed her four days after
robbing DeFore. See id.
Â Â Â Â Â Â Applying the criteria for determining whether the errors were harmless, we cannot conclude
beyond a reasonable doubt that the error during the punishment phase of the trial of the September
25 robbery did not contribute to Chandler's punishment. See Tex. R. App. P. 81(b)(2); Harris
v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). Although the jury had before it evidence
that Chandler had committed two prior feloniesâpossession of a controlled substance and
murderâone simply cannot conclude beyond a reasonable doubt that the jury in determining
punishment would have ignored and been unaffected by evidence he had been recently involved
in a robbery spree.
Â Â Â Â Â Â The second error occurred during the guilt phase of the trial of the September 21 offense. 
Again, using the guidelines in Harris for determining harmless error, we cannot conclude beyond
a reasonable doubt that evidence of the September 25 robbery did not contribute to either 
Chandler's guilt or punishment. See id.
Â Â Â Â Â Â We sustain the third point in both causes. Chandler also complains in his fourth points that
the court improperly admitted State's exhibit number four, a pen packet, during the punishment
stage over his objection that it contained references to non-final extraneous offenses. These
complaints are not reached because of our disposition of the third points.
REFUSAL OF CONTINUANCES
Â Â Â Â Â Â In a fifth point in each cause, Chandler complains that the court erred when it denied his
motion for a continuance and required him to proceed to trial without a material witness who was
unavailable. "The granting or denial of a motion for continuance is vested in the sound discretion
of the trial court, and reversal of a judgment is justified only when it is shown [that] the trial court
has abused its discretion." Hernandez v. State, 643 S.W.2d 397, 399 (Tex. Crim. App. 1983). 
Apparently, the unavailable witness would have testified that another individual matched
Chandler's physical description. The court did not abuse its discretion when it refused to grant
a continuance to find and produce such a witness. Point five is overruled in both causes.
Â Â Â Â Â Â In his sixth points, Chandler complains that the court erred in denying his motion for a
continuance and requiring him to proceed to trial the day after the court ruled on his pretrial
discovery motion. We overrule these points for the reasons given in connection with point five. 
BURDEN OF PROOF
Â Â Â Â Â Â Â Chandler's final complaint is that the court failed to instruct the jury on the burden of proof. 
However, the record reflects that the court included the standard instruction on the burden of 
proof and properly applied that burden to the facts in each charge on guilt-innocence. We overrule
point seven in each cause.
DISPOSITION
Â Â Â Â Â Â Reversible error having occurred during the guilt stage of Cause No. 91-120-CR, we reverse
the judgment in its entirety and remand that cause for a new trial. Finding no error during the
guilt stage of Cause No. 91-121-CR, but concluding that reversible error occurred during the
punishment portion of the proceeding, we affirm the conviction in that cause but remand for a new
punishment hearing. See Tex. Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp. 1993). 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BOB L. THOMAS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Before Chief Justice Thomas,
Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Justice Vance
Cause No. 91-120-CR reversed and remanded
Cause No. 91-121-CR remanded for new punishment
Â Â Â Â Â Â hearing
Opinion delivered and filed February 3, 1993
Do not publish
[OPINION WITHDRAWN 2-10-93]



eference>[5] 
Any other result would defeat the policyÂs language, EdÂs intent, and the AIDÂs
purpose.Â  Furthermore, but not critical
to our holding, it appears from the record that the $124,882.03 Lincoln
National policy, which was listed in the AID along with the two State Farm
policies as security for the alimony, satisfied the AIDÂs requirement that Ed
maintain those policies in an amount sufficient to pay the outstanding alimony
amount.Â  When Ed made Toni the State Farm beneficiary in August 2002, the
alimony payable to Linda was $120,000.Â  Cf. Korzekwa v. Prudential Ins. Co.,
669 S.W.2d 775, 778 (Tex. App.ÂSan Antonio 1984, writ dismÂd w.o.j.) (holding
that husbandÂs beneficiary change from former wife to daughter, in violation of
temporary order, was not voided where estate had sufficient assets to reimburse
former wife).Â  Because the Lincoln National policy satisfied the amount of
outstanding alimony payable to Linda, Ed was free, under the AID, to change the
State Farm $500,000 policy beneficiary to Toni.

Â Â Â Â Â Â Â Â Â  The trial court did not err in finding
Toni to be the rightful beneficiary.Â  We overrule LisaÂs three issues.

State FarmÂs Article 21.55 Liability

Â Â Â Â Â Â Â Â Â  State Farm complains of the trial
courtÂs award of attorneyÂs fees, statutory penalties and their calculation,
and prejudgment interest.

Â Â Â Â Â Â Â Â Â  In its first issue, State Farm argues
that the trial court erred by assessing penalties and attorneyÂs fees,
asserting that, as a matter of law, Toni was not a claimant under Article 21.55
and that its filing of the interpleader action invoked a common-law exception
to Article 21.55 liability.

Â Â Â Â Â Â Â Â Â  Article 21.55 of the Texas Insurance
Code, the Prompt Payment of Claims Act, requires an insurer to follow certain
procedures and meet certain deadlines when it receives, accepts, rejects, or
pays an insurance claim.Â  See Tex.
Ins. Code Ann. art. 21.55 (Vernon Supp. 2004-05).Â  The stated purpose of
the Act is to require insurers to promptly pay claims.Â  Id. Â§ 8; see
also Creighton v. Barnes, 257 S.W.2d 101, 104 (Tex. 1953) (ÂPrompt payment
of life insurance to those who are beneficiaries is of inestimable importance
to those who are left behind at the death of an insured.Â  Delay and confusion
resulting in unnecessary hardships should be avoided.Â).

Â Â Â Â Â Â Â Â Â  The elements of an Article 21.55,
section 6 claim are: (1) a claim under an insurance policy; (2) the insurer is
liable for the claim; and (3) the insurer has failed to follow one or more
sections of Article 21.55 with respect to the claim.Â  Tex. Ins. Code Ann. art. 21.55 Â§ 6; Allstate Ins. Co. v.
Bonner, 51 S.W.3d 289, 291 (Tex. 2001).Â  If an insurer delays payment of a
claim following its receipt of properly requested items for more than sixty
days, the insurer shall pay damages of, in addition to the amount of the claim,
18% per annum on the claim amount and reasonable attorney fees.Â  Tex. Ins. Code Ann. art. 21.55 Â§Â§ 3(f),
6.

Â Â Â Â Â Â Â Â Â  ToniÂs claim against State Farm is based
on State FarmÂs failure to pay her the policy proceeds within sixty days of
receipt of her September 11, 2002, claim.Â  State Farm did not pay Toni within
sixty days; instead, on November 22, 2002, seventy-two days later, it filed its
interpleader action and deposited the policy proceeds into the registry of the
court.

Â Â Â Â Â Â Â Â Â  State Farm first argues that Toni is
not a ÂclaimantÂ under Article 21.55. Â A ÂclaimantÂ is defined as Âa person
making a claim.ÂÂ  Id. Â§ 1(2).Â  The statute defines ÂclaimÂ as Âa first party
claim made by an insured or a policyholder under an insurance policy or
contract or by a beneficiary named in the policy or contract that must be paid
by the insurer directly to the insured or beneficiary.ÂÂ  Id. Â§ 1(3).Â  State
FarmÂs argument is thus premised on its assertion that Toni was not a named
beneficiary because EdÂs request to name Toni had not been ÂrecordedÂ by State
Farm.Â  We have already rejected this assertion in rejecting LisaÂs arguments, and
we reject it on the same grounds with respect to ToniÂs Article 21.55 claim
against State Farm.Â  EdÂs designation of Toni as the beneficiary was effective
on the date that Ed signed the request, and Toni is a claimant for purposes of
Article 21.55.

State Farm next asserts that its
filing of the interpleader action invoked a common-law exception to Article
21.55 liability.Â  Initially, we note that there is no Âgood-faithÂ defense to
Article 21.55 liability.Â  Cater v. United Servs. Auto. AssÂn, 27 S.W.3d
81, 84 (Tex. App.ÂSan Antonio 2000, pet. denied).Â  If an insurer is found
liable under the policy, the 18% statutory penalty can be awarded even if the
insurer had a reasonable ground for denying coverage.Â  St. Paul Reinsurance
Co. v. Greenberg, 134 F.3d 1250, 1254 n.21 (5th Cir. 1998) (citing Higginbotham
v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 461 (5th Cir. 1997)); see
also Oram v. State Farm Lloyds, 977 S.W.2d 163, 167 (Tex. App.ÂAustin 1998,
no pet.) (even though insurerÂs interpretation of policy was reasonable,
rejection of claim was wrong because supreme court later found claim was not
excluded by policy).Â  If an insurer rejects a claim, and the rejection is later
determined to be wrongful, the insurer will be liable for having delayed
payment for more than sixty days.Â  Higginbotham, 103 F.3d at 461.Â  State
Farm acknowledges that Âgood-faithÂ is not a defense to Article 21.55 liability
but distinguishes these cases because they involve the denial of claims and are
not interpleader actions.

State Farm relies on a common-law interpleader
exception to Article 21.55 liability:Â  If a reasonable doubt in fact or law
exists as to which rival claimant is entitled to insurance policy proceeds, and
for that reason the insurer in good faith declines to pay the named beneficiary
but admits liability on the policy and deposits the funds, it is liable only
for the policyÂs face amount.Â  Great Am. Reserve Ins. Co. v. Sanders,
525 S.W.2d 956, 958 (Tex. 1975).Â  In Sanders, where the predecessor to
Article 21.55 (former Article 3.62) required payment by the life insurer within
thirty days to avoid statutory penalties and attorneyÂs fees, the insurer filed
the interpleader thirty-seven days after receiving demands for the policy
proceeds.Â  The supreme court held that the insurer was not liable for the
penalty and attorneyÂs fees based on the facts of the case but noted: ÂWe are
not deciding whether in another case a period of delay before interpleading the
competing claimants might be so unreasonable as to justify imposition of the
statutory penalty.ÂÂ  Id. at 959.Â  

Such a case was found where the life
insurer did not admit liability on the policy thirty-seven days after the claim
was made (under former Article 3.62Âs thirty-day requirement) and did not
deposit the proceeds until almost seven months after suit was filed against the
insurer.Â  See Cross v. John Hancock Mut. Life Ins. Co., 722 S.W.2d 759,
760-61 (Tex. App.ÂHouston [14th Dist.] 1986, no writ).[6]Â 
In another case, the insured was an agent of the insurer and over time had
embezzled from the insurer, using some of the embezzled funds to pay premiums
on a $300,000 life insurance policy.Â  Marineau v. General Am. Life Ins. Co.,
898 S.W.2d 397, 400 (Tex. App.ÂFort Worth 1995, writ denied).Â  After the
insured killed himself and his beneficiary spouse sought the policyÂs face
amount, the insurer filed a declaratory judgment action for a determination of
the rights of the parties to the proceeds.Â  The insurer did not interplead the
proceeds, initially taking the position that it was entitled to all the
proceeds.Â  The court of appeals affirmed the trial courtÂs finding that the
insurer was entitled (through a constructive trust) to a share (68.1%) of the
proceeds proportionate to the amount of embezzled funds in the insuredÂs
account from which he had paid the premiums, but it further held that the
controversy over the proceeds and the declaratory judgment action did not
preclude the penalty and attorneyÂs fees under former Article 3.62, finding
their award to be mandatory when the insurer is held liable for any amount on
the policy.Â  Id. at 405.Â  ÂWhere an insurer has doubt that the claimant
is entitled to the proceeds of the policy, it may decline to pay the claim, but
it then takes the chance of being wrong and incurring statutory penalties and
attorneyÂs fees, should it be held liable for the proceeds.Â Â Id. at
404.

An unreasonable delay in
interpleading funds can thus result in the imposition of Article 21.55Âs
penalty.Â  Risner v. Amex Life Ins. Co., 1993 WL 55957 at *2 (N.D. Tex. 1993).Â  ÂHow much time must pass before a delay in interpleading becomes unreasonable
depends largely on the circumstances of the particular case.ÂÂ  Id. (numerous life insurers, who spent from 8 to 15 months investigating claims and
delayed interpleading from 7 to 23 months after claims were filed, were not
liable for statutory penalty where insured was murdered while vacationing in
Columbia and spouse beneficiaryÂs involvement in murder was suspected); accord
Franklin Life Ins. Co. v. Greer, 219 S.W.2d 137, 143 (Tex. Civ.
App.ÂTexarkana) (court excused insurerÂs 11-month delay in interpleading funds
where beneficiary was suspected of murdering insured), revÂd on other
grounds, 221 S.W.2d 857 (Tex. 1949).Â  Other cases have held that an insurer
can avoid Article 21.55 liability by filing an interpleader outside the
statutory window, or after a claimant has first filed suit, but any delay still
must be reasonable.Â  See Clements v. Minnesota Life Ins. Co., ---
S.W.3d ---, ---, 2004 WL 1516450 at *4 (Tex. App.ÂHouston [1st Dist.] July 8,
2004, no pet.) (insurer may not Âunreasonably delayÂ); Gabler v. Minnesota Mut. Life Ins. Co., 498 S.W.2d 413, 418 (Tex. Civ. App.ÂTexarkana 1973, no
writ) (court declined to award penalty where insurer delayed four months after
death of insured to interplead funds).

The cases addressing the common-law interpleader
exception to Article 21.55 liability require the insurer to interplead without
unreasonable delay, which is determined by the facts of each case.Â  To
adequately address State FarmÂs first issue, we thus must review the evidence and
the trial courtÂs findings of fact to consider whether State FarmÂs delay in
filing the interpleader was unreasonable.

Legal and Factual Sufficiency of the Evidence

The trial court made
numerous findings of fact and conclusions of law that Toni requested.[7]Â 
State Farm also requested findings of fact and conclusions of law, but it does not
raise as an issue on appeal the trial courtÂs refusal of its requests.

In its brief, State Farm complains
that the trial court erred because State Farm conclusively proved as a matter
of law Âthat Article 21.55 does not apply to this caseÂ and that the trial
courtÂs award of statutory penalties and attorneyÂs fees is against the great
weight and preponderance of the evidence.Â  It also asserts that the evidence is
legally and factually insufficient to support the trial courtÂs award of
statutory penalties and attorneyÂs fees under Article 21.55. [8]

Toni had the burden of proof on the
elements of her Article 21.55 claim.Â  Except for ToniÂs claimant status, which
we have already addressed as a matter of law, State Farm does not argue that Toni
failed to meet her burden on any element; in fact, no dispute exists on whether
State Farm failed to pay ToniÂs claim within Article 21.55Âs sixty-day requirement.Â 
Rather, the issue that State Farm apparently intends to address is the legal
and factual sufficiency of the evidence on its common-law defensive exception
that it did not unreasonably delay in filing the interpleader action.[9]Â 
In proving either its defensive exception
or its interpleader elements, State Farm had the burden of proving that its
delay in filing the interpleader was reasonable (or not unreasonable).

Â Â Â Â Â Â Â Â Â  When the party that had the burden of
proof at trial complains of legal insufficiency of an adverse finding, that
party must demonstrate that the evidence establishes conclusively, i.e.
as a matter of law, all vital facts in support of the finding sought.[10]Â 
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001).Â  We first
examine the record for evidence supporting the adverse finding, ignoring all
evidence to the contrary.Â  Id.Â  If more than a scintilla of evidence
supports the adverse finding, our inquiry ends.Â  Id.Â  "More than a
scintilla of evidence exists where the evidence supporting the finding, as a
whole, rises to a level that would enable reasonable and fair-minded people to
differ in their conclusions."Â  Burroughs Wellcome Co. v. Crye, 907
S.W.2d 497, 499 (Tex. 1995) (citations omitted); Beard v. Beard, 49
S.W.3d 40, 55 (Tex. App.ÂWaco 2001, pet. denied).

When the party complaining of the
factual sufficiency of the evidence had the burden of proof at trial, it must
demonstrate that the adverse finding is contrary to the great weight and
preponderance of the evidence.[11]Â 
Francis, 46 S.W.3d at 242; Beard, 49 S.W.3d at 55.Â  We weigh all
the evidence, and we can set aside the adverse finding only if it is so against
the great weight and preponderance of the evidence that it is clearly wrong and
unjust.Â  Francis, 46 S.W.3d at 242.Â Â  In doing so, we must detail the
evidence and state in what regard the contrary evidence greatly outweighs the
evidence in support of the adverse finding.Â  Id.Â  We will apply these
standards to the arguments raised by State Farm.

Â Â Â Â Â Â Â Â Â  In addition to the evidence already
detailed above, the following correspondence was exchanged among the various
parties:

Â·Â Â Â Â Â Â Â 
A September 5, 2002, letter
from ToniÂs lawyer to State Farm agent Warren Barker (with a copy of it to be sent
to State Farm), pointing out (1) EdÂs August 1, 2000 [sic]
change-of-beneficiary designation of Toni, (2) the policy language that his
request took effect the date Ed signed the request and that the proceeds were
payable to the insuredÂs beneficiary, and (3) that Toni was thus the properly designated
beneficiary and the proceeds were payable to her;

Â 

Â·Â Â Â Â Â Â Â 
State FarmÂs September 10,
2002, letter to ToniÂs lawyer, acknowledging receipt of his September 5, 2002,
letter and transmitting claim forms for ToniÂs completion;

Â 

Â·Â Â Â Â Â Â Â 
A September 18, 2002, letter
from ToniÂs lawyer to State Farm, enclosing the AID and (1) explaining his view
of the AIDÂs effect on the State Farm policy and that Ed had the right in the
AID to change beneficiaries, (2) that EdÂs designation of Toni was thus proper
under the policy and the AID, (3) that EdÂs estate was liable under the AID for
LindaÂs monthly contractual alimony payment (which at that time was for
twenty-four more months, for a total of $120,000), (4) that therefore $380,000
in policy proceeds were immediately payable to Toni, and (5) that the remaining
$120,000 be held for Toni in an interest bearing account as security for the
alimony should EdÂs estate not make the monthly payments, with $5,000 being
released each month to Toni as EdÂs estate pays each monthly alimony payment
until the final payment is made;

Â 

Â·Â Â Â Â Â Â Â 
State FarmÂs October 1,
2002, letter to ToniÂs lawyer, stating (1) that Toni was not the primary
beneficiary of record, (2) that her claim was based on an Âunrecorded change of
beneficiary request dated August 1, 2002,Â (3) that Linda was the Âprimary
beneficiary of record,Â (4) that Lisa had filed an adverse and conflicting
claim on the $500,000 policy, (5) that Toni was not listed as the primary
beneficiary of record on the $175,000 State Farm policy and that ToniÂs claim
on that policy was adverse and competing with LisaÂs claim, (6) that State Farm
Âis not in a position to determine who is entitled to the proceeds of these
policies,Â and (7) that State Farm was retaining an attorney and if the parties
cannot reach an agreement, State Farm would file an interpleader;

Â 

Â·Â Â Â Â Â Â Â 
State FarmÂs November 19,
2002, letter to ToniÂs lawyer, stating that State Farm had paid the $175,000
State Farm policy proceeds to Lisa because Linda had earlier consented to EdÂs
change of beneficiary, and that the State Farm $500,000 policy file had been
referred to an attorney for filing an interpleader, which Âwill be filed in the
very near future.Â

Â 

The trial court did not make a
specific finding that State Farm unreasonably delayed in filing its
interpleader, nor did Toni request such a finding.Â  It did find, however, the
following related facts:

Â·Â Â Â Â Â Â Â 
EdÂs August 1, 2002
beneficiary change to Toni was effective on that day (No. 5);

Â 

Â·Â Â Â Â Â Â Â 
ToniÂs claim on the policy
was received by State Farm on September 11, 2002 (No. 9);

Â 

Â·Â Â Â Â Â Â Â 
State Farm did not accept or
reject ToniÂs claim within fifteen business days (Nos. 11, 12);

Â 

Â·Â Â Â Â Â Â Â 
The policy did not give
State Farm the right to approve or reject EdÂs August 1, 2002 beneficiary
change to Toni (No. 16);

Â 

Â·Â Â Â Â Â Â Â 
State Farm did not pay the
policy proceeds to Toni within sixty days of receiving ToniÂs claim (No. 18);

Â 

Â·Â Â Â Â Â Â Â 
State Farm did not comply
with Article 21.55Âs prompt payment requirement and is thus liable to pay, in
addition to the claim, an 18% penalty and attorneyÂs fees (No. 20);

Â 

Â·Â Â Â Â Â Â Â 
The AID explicitly provided
that Ed could name whomever he chose as beneficiary for the remainder of the
insurance policy not subject to LindaÂs security in the policy benefits for
contractual alimony payments (Nos. 26, 27);

Â 

Â·Â Â Â Â Â Â Â 
In his September 18, 2002
letter, ToniÂs attorney explained to State Farm that no adversity existed
between her claim to the policy benefits not subject to LindaÂs alimony
security interest ($380,000) and demanded immediate payment on ToniÂs claim in
that amount (Nos. 33, 34);

Â 

Â·Â Â Â Â Â Â Â 
State Farm had no right to
refuse to recognize what it referred to as EdÂs Âunrecorded change of
beneficiaryÂ to Toni, which it asserted ToniÂs claim was based on (Nos. 35,
36);

Â 

Â·Â Â Â Â Â Â Â 
Because State Farm refused
to accept EdÂs August 1, 2002 beneficiary change to Toni, its actions were
unreasonable (No. 44);

Â 

Â·Â Â Â Â Â Â Â 
State Farm should not have
had any reasonable doubt that Toni was the primary beneficiary under EdÂs
August 1, 2002 beneficiary change (No. 46).

Â 

When a party requests findings and
the trial court files them, the court of appeals can presume that omitted
findings support the judgment only when (1) an element of the ground of
recovery or defense was included in the findings of fact, (2) the omitted
element was not properly requested, and (3) the omitted finding is supported by
the evidence.Â  Tex. R. Civ. P.
299; American NatÂl Ins. Co. v. Paul, 927 S.W.2d 239, 245 (Tex. App.ÂAustin 1996, writ denied); Warehouse Partners v. Gardner, 910 S.W.2d 19,
23 (Tex. App.ÂDallas 1995, writ denied); see Tarrant County Water Control
& Improvement Dist. v. Haupt, Inc., 854 S.W.2d 909, 913 (Tex. 1993)
(where record contained some evidence of reasonableness, that issue was deemed
found in support of trial courtÂs judgment).

In this case, the trial court found
that State Farm did not pay ToniÂs claim within sixty days and found a
violation of Article 21.55.Â  The trial court also found that State FarmÂs
refusal to accept EdÂs August 1, 2002 beneficiary change to Toni was
ÂunreasonableÂ and that State Farm Âshould not have had any reasonable doubtÂ
that Toni was the primary beneficiary.Â  Elements of both the ground of recovery
and State FarmÂs defense are thus included in the findings.Â  And because the
evidence supports a finding that State FarmÂs delay in filing the interpleader
was unreasonable, we find that Rule 299 is met and presume an omitted finding by
the trial court that State FarmÂs delay was unreasonable.

Â Â Â Â Â Â Â Â Â  As we held above, the evidence and the
applicable law show that State Farm incorrectly rejected EdÂs designation of
Toni as the beneficiary.Â  Additionally, the record is silent on whether State
Farm ever knew the specific terms of the AID (especially that Linda was an ÂirrevocableÂ
beneficiary of the policy benefits only as security for the amount of outstanding
alimony) until the AID was provided and explained to State Farm by ToniÂs
lawyer.Â  ToniÂs lawyerÂs September 5, 2002 and September 18, 2002 letters spelled
out the relevant policy provisions, the propriety of EdÂs August 1, 2002
beneficiary change and its effectiveness as of that date, and the terms of the
AID.Â  Yet State Farm inexplicably waited until November 22, 2002 (seventy-two
days after receiving ToniÂs claim and two days after Toni filed suit) to file its
interpleader action.[12]

Â Â Â Â Â Â Â Â Â  This case is more akin to Marineau,
where the insurer initially determined the beneficiary was not entitled to any
of the proceeds, when she was in fact entitled to a percentage, subject to a
constructive trust on the amount that she was not entitled to.Â  Marineau,
898 S.W.2d at 404-05. Â The insurer was liable for the penalty and attorneyÂs
fees because of its initial mistake.Â  Likewise, State Farm initially erred in
rejecting EdÂs beneficiary designation of Toni, a factor distinguishing this
case from other interpleader cases.Â  The
purpose of interpleader is to allow an ÂinnocentÂ stakeholder facing rival
claims to let the court decide who is entitled to the funds.Â  Union Gas
Corp. v. Gisler, 129 S.W.3d 145, 153 (Tex. App.ÂCorpus Christi 2003, no pet.).Â 
Because interpleader has its roots in equity and provides an equitable remedy
for the stakeholder, the stakeholder that seeks equity must Âdo equity.ÂÂ  Id.Â  Thus, for example, if the stakeholder is responsible for the conflicting claims
to the funds, the stakeholder cannot recover attorneyÂs fees.Â  Id.; Brown
v. Getty Reserve Oil, Inc., 626 S.W.2d 810, 815 (Tex. App.ÂAmarillo 1981,
writ dismÂd).Â  Or, if the stakeholder creates its own predicament, the trial
court, in the exercise of its equity jurisdiction, can deny the interpleader.Â  Gisler,
129 S.W.3d at 153.

Â Â Â Â Â Â Â Â Â  State Farm also refused ToniÂs lawyerÂs
request that it pay Toni the balance of the proceeds ($380,000) that was not
subject to LindaÂs security in the amount of payable alimony ($120,000).Â  State
FarmÂs initial error in wrongfully rejecting EdÂs beneficiary change created
the uncertainty, allowed the competing claims, and led to the interpleader, and
there is evidence that supports the trial courtÂs findings that State FarmÂs
actions were unreasonable and that it should have had no doubt that Toni was
the beneficiary. Â Moreover, because State Farm created its own predicament, the
trial court, in the exercise of its equity jurisdiction, would not have abused
its discretion in finding that State Farm was not an ÂinnocentÂ stakeholder and
was not entitled to the common-law interpleader exception to Article 21.55
liability.Â  See Gisler, 129 S.W.3d at 153. Â In sum, there is evidence
that State FarmÂs actions were unreasonable and that those actions caused the
delay, which in this case amount to an unreasonable delay.

Â Â Â Â Â Â Â Â Â  We hold that more than a scintilla of
evidence exists to support the omitted finding that State Farm unreasonably
delayed in filing the interpleader and that State Farm thus did not conclusively
establish that its delay was not unreasonable. Â Legally sufficient evidence
supports this omitted finding.Â  And after weighing all the evidence, we hold
that the omitted finding of unreasonable delay is not against the great weight
and preponderance of the evidence.Â  State FarmÂs challenge to the legal and
factual sufficiency of the evidence on its unreasonable delay is thus
overruled.

Challenges to Specific Findings of Fact and
Conclusions of Law

State FarmÂs fourth issue challenges
various findings of fact and conclusions of law made by the trial court.Â  The
trial court is required to make findings of fact only on controlling issues,
not on matters of evidence.Â  ASAI v. Vanco Insulation Abatement, Inc.,
932 S.W.2d 118, 122 (Tex. App.ÂEl Paso 1996, no writ); Rafferty v. Finstad,
903 S.W.2d 374, 376 (Tex. App.ÂHouston [1st Dist.] 1995, writ denied).Â  An
issue is controlling when it will support a basis for judgment for the issueÂs
proponent.Â  Taylor v. Texas Dept. Pub. Safety, 754 S.W.2d 464,
468 (Tex. App.ÂFort Worth 1988, writ denied).

State Farm complains that several
findings (Nos. 3, 13, 38, and 41) are not supported by the evidence because
they allegedly are incomplete renditions of matters in evidence, such as policy
or letter excerpts.Â  Because these complaints go to evidentiary matters that
are not controlling (and that we have otherwise addressed in State FarmÂs first
issue), the trial court did not err.Â  See Rafferty, 903 S.W.2d at 376
(trial court not required to make findings that relate merely to evidentiary
matters).Â  State Farm also alleges that the trial court erred by not including
its requested finding of fact that Linda made a claim on the policy.Â  This
complaint is waived because State Farm did not raise as an issue the trial
courtÂs refusal to make additional findings, but regardless, this complaint
likewise goes to an evidentiary matter that is not controlling and that we
otherwise addressed in State FarmÂs first issue.

Â Â Â Â Â Â Â Â Â  Next, State Farm complains that
numerous findings and conclusions (Nos. 5, 15, 16, 36, 39, and 42) relating to
EdÂs August 1, 2002 beneficiary change to Toni, its wrongful refusal by State
Farm, and the effect of the AID are not supported by the evidence.Â  In ruling
on LisaÂs issues and State FarmÂs first issue, we have already considered and rejected
State FarmÂs complaints on these matters.

Â Â Â Â Â Â Â Â Â  The trial court made numerous findings
and conclusions (Nos. 23, 24, 48, 49, 50, and 51) that Toni was entitled to a
penalty and attorneyÂs fees under Article 21.55.Â  State Farm re-urges that the
trial courtÂs conclusions are erroneous as a matter of law, but we have already
considered and rejected State FarmÂs complaints on these matters.

Â Â Â Â Â Â Â Â Â  Finally, State Farm complains of the
trial courtÂs findings and conclusions on prejudgment interest and the
calculation of the penalty (Nos. 47 and 48).Â  Those complaints are addressed
below in our disposition of State FarmÂs second and third issues.

Â Â Â Â Â Â Â Â Â  For the above reasons, we overrule
State FarmÂs fourth issue.

Prejudgment Interest

State FarmÂs second issue complains that the
trial court erred as a matter of law in awarding prejudgment interest.Â  A
successful claimant under Article 21.55 can recover prejudgment interest on the
amount of the claim.Â  Dunn v. Southern Farm Bureau Cas. Ins. Co., 991
S.W.2d 467, 478 (Tex. App.ÂTyler 1999, pet. denied); see Teate v. Mutual
Life Ins. Co., 965 F. Supp. 891, 894 (E.D. Tex. 1997) (citing Marineau,
898 S.W.2d at 405).Â  Because the trial court did not err in awarding
prejudgment interest, we overrule State FarmÂs second issue.

Article 21.55 Penalty Calculation

Â Â Â Â Â Â Â Â Â  Next, in its third issue, State Farm
asserts error as a matter of law in the trial courtÂs calculation of the 18% penalty
under Article 21.55.Â  The trial court awarded $76,520.19 as of August 1, 2003,
and a per diem of $246.57 until the judgment was signed.Â  The judgment was
signed on August 11, 2003, so the total statutory penalty awarded was
$78,985.89.Â  State Farm argues that the 18% per annum penalty is not applicable
at all because its liability to Toni did not arise until the trial court
entered a final judgment.Â  Alternatively, it claims that if Article 21.55
applies, the penalty should have been calculated on the $500,000 policy
proceeds for only a period of twelve days:Â  from November 10, 2002, the
sixtieth day after State Farm received ToniÂs claim, until November 22, 2002,
the day State Farm deposited the proceeds into the registry of the court, for a
total of $2,958.84.

Â Â Â Â Â Â Â Â Â  The statutory damages start accruing
on the date the insurer violates the statute.Â  Texas Farmers Ins. Co.
v. Cameron, 24 S.W.3d 386, 400 (Tex. App.ÂDallas 2000, pet. denied); Teate,
956 F. Supp. at 894.Â  In this case, that date is November 10, 2002, the
sixtieth and last day that State Farm was allowed to pay Toni the proceeds to
avoid Article 21.55Âs penalties.Â  The remaining issue is thus whether State
FarmÂs tender of the proceeds into the registry of the court stopped the
accrual of the 18% penalty or whether the penalty continued to accrue until
judgment was entered.

Â Â Â Â Â Â Â Â Â  State FarmÂs argument that the ending
date should be the date of the judgment relies on Wellisch v. United
Services Automobile AssÂn, a case involving an uninsured/underinsured
motorist (UIM) claim.Â  Wellisch v. United Servs. Auto. AssÂn, 75 S.W.3d
53 (Tex. App.ÂSan Antonio 2002, pet. denied).Â  That case held that the
insurerÂs liability for UIM benefits does not arise until the claimant is
legally entitled to those benefits, which generally requires a settlement with
the tortfeasor or a judicial determination following trial on the issue of the
tortfeasorÂs liability.Â  Id. at 58.Â  Thus, rather than the date of the
covered event (i.e. the accident) being the date the insurerÂs liability
arose, the date the trial court entered final judgment was the date liability
on the UIM claim arose.Â  Id.

Â Â Â Â Â Â Â Â Â  State Farm relies on Cater v.
United Services Automobile AssÂn for its argument that the date it
deposited the policy proceeds with the court should toll the penalty. Â Cater
v. United Servs. Auto. AssÂn, 27 S.W.3d 81 (Tex. App.ÂSan Antonio 2000,
pet. denied).Â  This case involved a foundation damage claim that, except for
the plaintiffÂs Article 21.55 claim for penalties and attorneyÂs fees, was
settled after suit was filed for $40,000.Â  The plaintiff was paid the
settlement, and the Article 21.55 claims proceeded to trial.Â  The plaintiff
contended that she was entitled to the 18% penalty through the date of
judgment, but the court held that she was entitled to the penalty only until
she was paid the settlement.Â  Id. at 85.

Â Â Â Â Â Â Â Â Â  Neither of these cases is dispositive.Â 
Cater is distinguishable because its holding was based on the fact that
the claimant was actually paid.Â  While State Farm has deposited the proceeds
with the court, Toni still has not been paid.Â  Wellisch is
distinguishable because a ripe UIM claim requires a settlement or a negligence
trial.

Â Â Â Â Â Â Â Â Â  The purpose of Article 21.55 is to
require prompt payment of insurance claims, and we are to liberally construe
the Act to promote this purpose.Â  Tex.
Ins. Code Ann. art. 21.55 Â§ 8.Â  We have found that State Farm should
have accepted EdÂs beneficiary designation of Toni.Â  By extension, when Ed died
and Toni made a claim on the policy, State Farm should have promptly paid it. Â Instead,
State FarmÂs wrongful rejection of EdÂs request set in motion a series of
events that led to the interpleader, and Toni still has not been paid.Â  To
promote the purpose of Article 21.55, we hold that the 18% penalty should be
calculated until the date of the judgment.Â  See Cameron, 24 S.W.3d at
400 (calculating penalty to time of judgment).

Â Â Â Â Â Â Â Â Â  Accordingly, Toni is entitled to a
penalty award of 18% per annum on $500,000 from November 10, 2002 to August 11,
2003.Â  The record does not reflect the method used in the trial courtÂs calculation
of the judgmentÂs total statutory penalty award of $78,985.89.Â  The correct
amount is calculated by the formula P x R x T = I, where P is the
amount of the claim ($500,000), R is the interest rate (.18), T
is the time (274 days divided by 365 days = .75 years), and I ($67,500) is
the interest award.Â  Cameron, 24 S.W.3d at 400 & n.5.Â  In this case,
$67,500 is the correct penalty calculation.Â  The trial court incorrectly
calculated the penalty, so we must reform that part of the judgment.

Conclusion

Â 

Â Â Â Â Â Â Â Â Â  We overrule all of LisaÂs and State
FarmÂs issues.Â  We reform the trial courtÂs judgment to reflect the correct
statutory penalty amount of $67,500.Â  We affirm the judgment as reformed.

Â 

Â 

Â 

Â 

BILL VANCE

Justice

Â 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

(Chief Justice Gray dissenting)

Reformed
and affirmed

Opinion
delivered and filed August 17, 2005

[CV06]









Â Â Â  [1]Â Â Â Â Â Â  Linda
was not specifically identified by Ed as an ÂirrevocableÂ beneficiary in any of
his designations of her on this policy.





Â Â Â  [2]Â Â Â Â Â Â  The
trial court found that Lisa was the last designated beneficiary on the $175,000
policy and that State Farm paid those policy proceeds to her.





Â Â Â  [3]Â Â Â Â Â Â  The
record does not show that State Farm ever had knowledge of the specific terms
of the AID.





Â Â Â  [4]Â Â Â Â Â Â Â Â Â Â  Toni concedes that EdÂs beneficiary change to
her was subject to LindaÂs security interest in the policy proceeds.Â  See
Burke, 614 S.W.2d at 849 (holding that husbandÂs beneficiary change to
second wife was subject to first wifeÂs community interest in policy proceeds).





Â Â Â  [5]Â Â Â Â Â Â  In
this respect, the constructive trust agreed to by Toni and Linda and fashioned
by the trial court was an appropriate remedy.Â  See Hudspeth v. Stoker,
644 S.W.2d 92, 94-96 (Tex. App.ÂSan Antonio 1982, writ refÂd).





Â Â Â  [6]Â Â Â Â Â Â Â Â Â Â  In Cross, the court stated that Âthere is
no good faith exception to the statute, except where the insurance company is
in doubt as to whom the money should be paid because of conflicting claims.Â 
This exception applies only when the insurance company acts in good faith and
makes its position known promptly and clearly, promptly admits its liability
and makes a bona fide tender of the full amount due.ÂÂ  Id. (citing Boomer
v. Massachusetts Bonding & Ins. Co., 148 S.W.2d 945, 949 (Tex. Civ.
App.ÂEl Paso 1941, writ dismÂd)).





Â Â Â  [7]Â Â Â Â Â Â  Findings of fact in
a bench trial have the same force and dignity as a jury's verdict upon jury
questions.Â  Anderson v. City of Seven Points, 806 S.W.2d 791, 794
(Tex. 1991).Â  When challenged on appeal, the findings are not conclusive on the
appellate court if there is a complete reporter's record, as there is here.Â  Zac
Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987); In re K.R.P., 80 S.W.3d 669, 673 (Tex. App.ÂHouston [1st Dist.] 2002,
pet. denied).Â  The trial court's findings will not be disturbed if there is
evidence of probative force to support them.Â  Barrientos v. Nava, 94
S.W.3d 270, 288 (Tex. App.ÂHouston [14th Dist.] 2002, no pet.).Â  A trial
court's findings are reviewable for legal and factual sufficiency of the
evidence by the same standards that are applied in reviewing evidence supporting
a jury's answer.Â  Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).Â  We review the trial court's conclusions of law de novo.Â  Smith v. Smith,
22 S.W.3d 140, 143-44 (Tex. App.ÂHouston [14th Dist.] 2000, no pet.).Â  Under de
novo review, the reviewing court exercises its own judgment and redetermines
each legal issue.Â  Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex. 1999).Â  We will uphold conclusions of law on appeal if the judgment can be sustained
on any legal theory that the evidence supports.Â  Waggoner v. Morrow, 932
S.W.2d 627, 631 (Tex. App.ÂHouston [14th Dist.] 1996, no writ).Â  Incorrect
conclusions of law do not require reversal if the controlling findings of fact
support the judgment under a correct legal theory.Â  Id.

Â 





Â Â Â  [8]Â Â Â Â Â Â  State FarmÂs fourth issue complains that the
evidence is legally and factually insufficient to support various specific
findings of fact.Â  Because State FarmÂs fourth issue raises the sufficiency of
the evidence, and because State FarmÂs brief addresses the sufficiency of the
evidence throughout the discussion of its first issue, we will address State
FarmÂs complaint that the evidence establishes as a matter of law that Article
21.55 does not apply or that the trial courtÂs implied finding is against the
great weight and preponderance of the evidence.Â  See
Tex. R. App. P. 38.1(e) (ÂThe
brief must state conclusively all issues or points presented for review.Â  The
statement of an issue or point will be treated as covering every subsidiary
question that is fairly included.Â); Jakab v. Gran Villa Tounhouses
Homeowners AssÂn, Inc., 149 S.W.3d 863, 866 n.1 (Tex. App.ÂDallas 2004, no
pet.); Stevenson v. LeBoeuf, 16 S.W.3d 829, 833-44 (Tex. App.ÂHouston
[14th Dist.] 2000, pet. denied).

Â 





Â Â Â  [9]Â Â Â Â Â Â Â Â Â Â  The
elements of an interpleader action are:Â  (1) the party is either subject to, or
has reasonable grounds to anticipate, rival claims to the same fund or
property; (2) the party has not unreasonably delayed filing an action for
interpleader; and (3) the party has unconditionally tendered the fund or
property into the courtÂs registry.Â  Hanzel v. Herring, 80 S.W.3d 167,
173 (Tex. App.ÂFort Worth 2002, no pet.) (citing Bryant v. United Shortline
Inc., 984 S.W.2d 292, 296 (Tex. App.ÂFort Worth), aff'd, 972 S.W.2d
26 (Tex. 1998)).

Â 





Â Â Â  [10]Â Â Â Â Â Â Â Â  A Âmatter-of-lawÂ or Âconclusive-evidenceÂ issue
is used when the party with the burden of proof challenges the legal
sufficiency of the evidence to support unfavorably answered jury questions
or unfavorable express or implied findings of fact.Â  See Gooch v. American
Sling Co., 902 S.W.2d 181, 183-84 (Tex. App.ÂFort Worth 1995, no writ).





Â Â Â  [11]Â Â Â Â Â  An
Âagainst-the-great-weight-and-preponderanceÂ issue is used when the party with
the burden of proof challenges the factual sufficiency of the evidence
to support the factfinderÂs Âfailure to find.ÂÂ  See Gooch, 902 S.W.2d at
183-84.

Â 





Â Â Â  [12]Â Â Â Â Â  In
its brief State Farm asserts that it waited this long to file the interpleader
action because it attempted to facilitate a settlement among the parties, but
there is no evidence in the record supporting this assertion.Â  See Quanaim
v. Frasco Rest. & Catering, 17 S.W.3d 30, 42 (Tex. App.ÂHouston [14th Dist.] 2000, pet. denied) (factual statements in partyÂs own motion or
response are not evidence); Flameout Design & Fabrication, Inc. v. Pennzoil
Caspian Corp, 994 S.W.2d 830, 838 (Tex. App.ÂHouston [1st Dist.] 1999, no
pet.) (factual statements in partyÂs own pleading are not evidence).

Â