GREAT AMERICAN RESERVE INSUR-
ANCE COMPANY, Petitioner,

v.

Violet SANDERS, Respondent.

No. B–5048.

Supreme Court of Texas.

July 16, 1975.

Rehearing Denied Sept. 24, 1975.

Elliott, Churchill, Hansen, Dyess & Maxfield, Mike D. Gibbs and Gary Maxfield, Dallas, for petitioner.

Andress, Woodgate & Lodewick, Wm. Andress, Jr., Dallas, for respondent.

POPE, Justice.

Great American Reserve Insurance Company filed an interpleader suit in district court naming as defendants the insured's ex-wife, Violet Sanders, and surviving widow, Jessie Sanders. The petition also named Hill Metropolitan Funeral Directors, Inc. because of an assignment to it by Violet Sanders for part of the insurance proceeds to cover the insured's funeral expenses. The trial court awarded the $5000 insurance proceeds to Violet Sanders, less $1208.60 awarded to the funeral home by virtue of its assigned interest, and less $500 attorney fees to the insurer-stakeholder, Great American Reserve Insurance Company. The court of civil appeals reversed and remanded. 516 S.W.2d 732. We reverse the judgment of the court of civil appeals and affirm that of the trial court.

This case presents us with two separate questions. First, whether there was a bona fide claim made by each of the rival claimants such as will allow the insurer-stakeholder to resort to the equitable remedy of interpleader. Second, whether Article 3.62, Vernon's Tex.Ins.Code Ann., imposes an absolute duty upon an insurer to either pay a claimant or interplead rival claimants within 30 days of the time demand is made for the proceeds.

The case was submitted to the trial court upon an agreed statement of facts. Nathaniel and Violet Sanders were married in 1960. They obtained a divorce on July 30, 1969, and Violet was awarded custody of their five minor children. The court ordered Nathaniel Sanders to pay $35.00 per week for child support.

Nathaniel Sanders married Jessie Mae Sanders in February, 1971. They separated in early summer of 1971, though no divorce action was brought by either party. Subsequent to this separation, in September, 1971, Violet Sanders threatened to bring contempt proceedings against Nathaniel because of his failure to make child support payments. Nathaniel proposed instead that he take out a $5000 life insurance policy, with Violet as beneficiary, and also that he begin making regular support payments. Nathaniel secured a certificate of insurance from Great American Reserve Insurance Company through a group plan available to employees of the City of Dallas. Violet was named as beneficiary and was given possession of the certificate.

Nathaniel's failure to make regular support payments continued and on February 14, 1973, a Dallas County Domestic Relations Court entered a commitment for contempt against him because of his delinquent child support payments amounting to $2478.00. The commitment was suspended, however, as long as Nathaniel made the $35.00 per week payments.

Nathaniel Sanders died on April 3, 1973. Violet Sanders assigned $1213.60 to Hill Metropolitan Funeral Directors, Inc. from the insurance proceeds. On May 9, 1973, both Violet and Jessie Mae filed proof of death with the insurer, and claimed the proceeds of the policy. Great American Reserve filed its petition in interpleader on June 15, 1973, wherein it admitted liability under the policy, and deposited the $5000.00 proceeds in the registry of the court. Great American alleged that it had honest doubts as to who was entitled to the proceeds, and asked $500 for attorney fees.

The trial court granted an agreed partial summary judgment in favor of the funeral home for $1208.60, by virtue of its assigned interest in that amount by Violet Sanders.

Great American was awarded $500 out of the fund for attorney fees, and the trial court determined that Violet Sanders was entitled to the balance.

Violet appealed the trial court's award of $500 to the insurer for attorney fees, and also appealed the trial court's refusal to award her attorney fees and a 12% penalty provided for in Article 3.62, Tex.Ins.Code Ann.[1] The court of civil appeals held that Great American had a duty to make an investigation within thirty days after the claim for proceeds was made, in order to determine who was entitled to the proceeds. According to that court, this investigation would have revealed the indisputable merit of Violet's claim and shown that Jessie's claim was entirely spurious. The court also held that Article 3.62 required the insurer to either pay a claimant within 30 days of demand for the proceeds, or to file its petition in intervention within this same period. We think that the court of civil appeals has placed a burden on the insurer not contemplated by Article 3.62.

■ Great American was entitled to maintain an interpleader suit if there existed a reasonable doubt, either of fact or law, as to which of the rival claimants was entitled to the proceeds of the policy. *Employers' Casualty Co. v. Rockwall County,* 120 Tex. 441, 35 S.W.2d 690 (1931). If the insurer's doubt is a reasonable one, and for that reason it in good faith declines to pay the named beneficiary, but admits liability and deposits the funds into court, it is liable only for the face amount of the policy. *Murray v. Bankers Life Co.,* 299 S.W.2d 730 (Tex.Civ.App.—1957, writ ref'd); *Givens v.*

*Girard Life Ins. Co.,* 480 S.W.2d 421, 428 (Tex.Civ.App.—1972, writ ref'd n. r. e.).

We must examine the nature of the conflicting claims in order to determine whether or not Great American was faced with a reasonable doubt as to which claim was superior. Violet Sanders was the named beneficiary, and had possession of the certificate of insurance. According to Article 3.48, Tex.Ins.Code Ann., an insurer may pay the named beneficiary of a policy without concern for further liability unless it receives notice of an adverse, and bona fide, claim to the proceeds.

■ Great American in this case was faced with an adverse claim, filed on the same day as Violet's claim, by Jessie Mae Sanders. An investigation of this claim would reveal that Jessie Mae was Nathaniel's wife at the time he took out the certificate of insurance, at all times when premiums were paid, and at the time of his death.

These facts raise the possibility that Jessie Mae was entitled to the proceeds, or some part thereof, on the ground that Nathaniel's act of naming his ex-wife beneficiary of a policy purchased with funds of the community of Nathaniel and Jessie Mae, was constructive fraud upon Jessie Mae. It was held in *Givens v. Girard Life Ins. Co.,* 480 S.W.2d 421, 426 (Tex.Civ.App. —1972, writ ref'd n. r. e.) that the widow "establishes constructive fraud prima facie by proof that life insurance was purchased with community funds for the benefit of an unrelated person, and the beneficiary then has the burden to justify such use of community funds."

1. Art. 3.62. Delay in Payment of Losses; Penalty For

   In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve

(12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. Such attorney fee shall be taxed as a part of the costs in the case. The Court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy. Acts 1951, 52nd Leg., ch. 491.

■ The beneficiary may rebut the prima facie case by showing special circumstances which justify the purchase of the life insurance. Obviously, the fact that the unrelated person is named as beneficiary and has possession of the policy does not rebut the prima facie case. The fact that the policy was to secure delinquent support payments for the benefit of the insured's minor children may be sufficient justification for the purchase of the policy, but this is not a determination which the insurance company should have to make.

The question of whether use of community funds is constructive fraud upon the wife is a difficult one. It is stated in Johanson, *Revocable Trusts and Community Property: The Substantive Problems*, 47 Tex.L.Rev. 537, 568 (1969):

> As a group the cases do not give clear guidelines. At best, they point up the factors that bear on the decision whether a transfer is likely to be held in constructive fraud of the wife's rights. Among the factors that have been emphasized are the relationship of the transferee to the transferor or his wife; whether there are special circumstances that tend to justify the transfer; the value of the assets transferred in relation to the total value of the community estate; and whether the wife has adequately been provided for out of the remaining community property and the separate property of the husband.

■ To require the insurance company in this case to discover every fact that may be a circumstance justifying use of the community funds, decide which facts are true and which are false, and apply the law of constructive fraud to those facts would defeat the very purpose of interpleader. An insurance company should not be compelled to act as judge and jury. *Gabler v. Minnesota Mutual Life Ins. Co.*, 498 S.W.2d 413 (Tex.Civ.App.—1973, no writ); *Demmer v. American Nat. Ins. Co.*, 263 S.W.2d 795 (Tex.Civ.App.—1953, no writ). Since we hold that interpleader was properly available to Great American, we also uphold the trial court's award to it of $500 attorney fees.

■ The court of civil appeals held that Great American was not in good faith in failing to interplead within 30 days under Article 3.62. That statute assesses a 12% penalty and reasonable attorney fees against the insurance company in favor of the rightful claimant where the company has failed to pay the claimant within 30 days. Several cases have held that where circumstances exist which make interpleader a proper remedy, as in this case, failure to pay the money into the court within 30 days after demand does not make the insurer liable for the penalty and attorney fees. *Murray v. Bankers Life Co., supra; Gabler v. Minnesota Mutual Life Ins. Co., supra; Givens v. Girard Life Ins. Co., supra; Franklin Life Ins. Co. v. Greer*, 219 S.W.2d 137 (Tex.Civ.App.—1949), *rev'd on other grounds but specifically approved this point*, 148 Tex. 166, 221 S.W.2d 857. In this case, the interpleader suit was filed thirty-seven days after the demands for the proceeds were received. We are not deciding whether in another case a period of delay before interpleading the competing claimants might be so unreasonable as to justify imposition of the statutory penalty.

We reverse the judgment of the court of civil appeals and affirm that of the trial court.