STATE FARM LIFE INSURANCE
COMPANY, Petitioner,

v.

Toni Wasson MARTINEZ, Respondent.

No. 05–0812.

Supreme Court of Texas.

Argued Dec. 7, 2006.

Delivered Feb. 9, 2007.

Rehearing Denied April 13, 2007.

J. Hampton Skelton, Eva C. Ramos, Stephanie Elizabeth Clark, Skelton & Woody, Austin, Allen A. King Jr., David Black & Associates, Houston, Raul A. Gonzalez, Law Offices of Raul A. Gonzalez, Austin, Chris J. Kling, Dallas, Stuart Smith, Greg

White, Naman, Howell, Smith & Lee LLP, Waco, for Petitioner.

Bill M. Payne, Payne, Watson, Miller, Malechek & Scherr, P.C., Bryan, for Respondent.

Larry A. Catlin, Bryan, R. Hal Moorman, Moorman, Tate, Moorman, Urquhart & Haley, L.L.P., Brenham, for Other.

Douglas W. Alexander, Alexander Dubose Jones & Townsend LLP, Austin, for Amicus Curiae.

Justice BRISTER delivered the opinion of the Court.

It has long been the rule in Texas that if an insurer promptly interpleads policy proceeds, it cannot be subjected to statutory penalties for delayed payment even if it missed the statutory deadlines. The Legislature's 1991 changes to the Insurance Code suggest the courts should not continue imposing a different deadline. But nothing in those changes suggests that statutory penalties should apply after interpleader occurs. Thus, we hold the court of appeals here properly imposed statutory penalties for the delay before interpleader was filed, but improperly imposed them thereafter.

## I. Background

After 13 years of marriage, Ed and Linda Martinez divorced in 1994. In their Agreement Incident to Divorce, Ed agreed to pay Linda contractual alimony of $5,000 per month for ten years ($600,000), with his estate to continue paying if he died earlier. Ed also agreed to name Linda as irrevocable beneficiary on three life insurance policies,[1] providing that he could drop those policies or change beneficiaries so

---

1. In addition to the $500,000 policy with State Farm at issue here, the Agreement listed a separate $175,000 policy issued by State Farm and a $124,882.03 policy issued by Lincoln National Life Insurance.

long as the unpaid alimony amount was covered.[2]

The policy at issue here is a $500,000 policy issued by State Farm. Beginning in 1994, this policy listed as beneficiary "Linda Martinez, 41, ex-wife, in accordance with divorce decree dated 09–15–94." On August 1, 2002, shortly before he died, Ed signed a State Farm "Change of Beneficiary" form naming Toni, his current wife, as beneficiary. State Farm refused to process the request, returning it on August 16th with a request for proof that the change complied with the divorce agreement.[3]

Ed died on August 25th—24 days after signing his request, and before acting on State Farm's response. Within three weeks, State Farm received three conflicting claims to the policy proceeds: (1) from Ed's daughter (Lisa) on September 2nd; (2) from his ex-wife (Linda) on September 5th; and (3) from his surviving spouse (Toni) on September 10th. Toni sued State Farm on November 20th. Two days later State Farm filed this interpleader, depositing $506,061 (the policy proceeds plus interest and a partial premium refund) in the court's registry.

Lisa (Ed's daughter and successor beneficiary on the policy) and Toni filed cross-motions for summary judgment seeking the proceeds. During the summary judgment hearing in February 2003, after the trial judge indicated Toni could not get the policy proceeds without a constructive trust imposed to secure Linda's alimony, Linda and Toni agreed to precisely that. Thereafter, the trial court granted Toni's summary judgment and denied Lisa's; the final judgment ordered State Farm to pay all the policy proceeds to Toni with $70,000 to be held in trust and paid $5,000 per month to Toni if Ed's estate continued to pay the balance of Linda's alimony.

But the case was not over. Toni claimed State Farm violated the Texas prompt payment of claims statute by failing to pay her within 60 days,[4] thus entitling her to penalty interest of 18 percent and attorney's fees:

> In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy, or the beneficiary making a claim under the policy, in addition to the amount of the claim, 18 percent per annum of the amount of

---

2. The Agreement Incident to Divorce provided:

> It is specifically agreed by the parties that so long as [Ed] maintains [Linda] as the beneficiary in an amount sufficient to pay her for the amount of alimony payments outstanding, that he may name as a beneficiary for the remainder of the above-described life insurance policies whomever he may choose. Further, if at some later date, [Ed] should determine to drop one or more of the policies above-described, he will be free to do so if the remaining policy or policies are sufficient to pay to [Linda] the amount of alimony payments outstanding.

3. State Farm's response stated:

> We are unable to process [Ed's] request since it is prohibited by the insured's di-

vorce decree dated 9/15/94. We currently show the primary beneficiary as "Linda Martinez in accordance with Divorce Decree dated 9/15/94." Therefore, since he is asking to remove the former spouse and name his current spouse as primary, we need Court documentation stating that he has the right to remove the former spouse. Since we cannot process this change, we are returning the original request to you. The beneficiary designation for this policy remains unchanged.

4. See Act of June 6, 1991, 72nd Leg., R.S., ch. 242, § 11.03, 1991 Tex. Gen. Laws 1043–45 (current version at TEX. INS.CODE §§ 542.051–.061). ("prompt payment of claims").

such claim as damages, together with reasonable attorney fees. If suit is filed, such attorney fees shall be taxed as part of the costs in the case.[5]

State Farm received Toni's claim on September 11th, so the 60–day period elapsed on November 10th. State Farm interpleaded the funds 12 days later. After a bench trial, the trial court assessed against State Farm prejudgment interest at 6 percent ($25,506.73), penalty interest at 18 percent ($76,520.19), and attorney's fees for the trial court ($37,089.92), court of appeals ($10,000), and this Court ($10,000).

Lisa and State Farm appealed. The court of appeals affirmed summary judgment against Lisa, finding Ed had changed the beneficiary to Toni.[6] The court also affirmed the judgment against State Farm, but reduced the penalty interest calculation to $67,500.[7] The court rejected State Farm's argument that penalty interest should apply only to the 12–day delay, holding it should continue until the final judgment "[t]o promote the purpose" of the statute.[8]

Lisa and State Farm filed petitions in this Court, but Lisa dismissed hers after reaching a settlement with Toni. We granted State Farm's petition to review the portion of the judgment assessing statutory penalties and attorney's fees against it.

## II. Was Toni a Named Beneficiary under the Statute?

State Farm first argues that Toni is not covered by the prompt payment statute, and thus entitled to none of its penalties.

■ As set forth above, the statute makes insurers liable to either a "holder of the policy" or a "beneficiary making a claim under the policy." Toni was not a policyholder, so she may recover only if she was the latter. The statute defines a "claim" to further limit coverage to beneficiaries named in the policy:

> "Claim" means a first party claim made by an insured or a policyholder under an insurance policy or contract or by a *beneficiary named in the policy* or contract that must be paid by the insurer directly to the insured or beneficiary.[9]

State Farm argues that Toni was not a named beneficiary at the time of Ed's death—due to its refusal to honor Ed's change-of-beneficiary request.

■ Generally, an insured's right to change beneficiaries is governed by the terms of the policy.[10] The policy here provided that a change of beneficiary would take effect when Ed signed a written request.[11] The policy defined a "re-

---

5. *See id.* § 11.03(6) (current version at Tex. Ins.Code §§ 542.058, 542.060).

6. 174 S.W.3d 772, 781 (Tex.App.-Waco 2005).

7. *Id.* at 791 (calculating interest as: $500,000 × 18 percent × (274 days/365 days) = $67,500).

8. *Id.* at 790.

9. *See* Act of June 6, 1991, 72nd Leg., R.S., ch. 242, § 11.03(1)(3), 1991 Tex. Gen. Laws 1043–45 (emphasis added) (current version at Tex. Ins.Code § 542.051(2)).

10. Acts of 1953, 53rd Leg., R.S., ch. 113, 1953 Tex. Gen. Laws 400 (current version at TEX. INS. CODE § 1103.055); *Volunteer State Life Ins. Co. v. Hardin*, 145 Tex. 245, 197 S.W.2d 105, 107 (1946).

11. The policy stated:

    **Change of Beneficiary Designation:** You may make a change while the Insured is alive by sending us a request. The change will take effect the date the request is signed, but the change will not affect any action we have taken before we receive the request. We have the right to request your policy to make the change on it.

quest" as one written "in a form acceptable to us." [12] As Ed signed and sent his request on State Farm's own printed form, it is hard to see how it could be deemed unacceptable. State Farm's valid concern that Ed's request might violate the divorce decree (a matter discussed below) did not make the request's "form" unacceptable.

But even if it did, and even if State Farm was right to check first, the policy still said that a change would take effect when a request was *signed,* not when it was *accepted.* Once Linda agreed to release her claims on the policy during the course of the litigation, Ed's designation of Toni became effective—retroactively—as of the day it was signed.

The Legislature has instructed us to construe the statute liberally to ensure prompt payment of insurance claims.[13] Accordingly, we hold that Toni was a named beneficiary entitled to prompt payment under the statute.

## III. Is Interpleader an Exception to the Statute?

■ State Farm also argues that the prompt payment statute does not apply when rival claims require an insurer to file an interpleader.

Since at least 1874, there have been Texas statutes punishing an insurer's failure to pay promptly.[14] Until 1991, these statutes generally provided that if a life insurance claim was not paid within 30 days, the insurer had to pay penalty interest of 12 percent and attorney's fees to the policy beneficiary.[15]

Throughout this same period, Texas common law provided that an insurer faced with rival claims to policy proceeds could interplead the funds, join the rivals who claimed them, and be discharged from further liability.[16] Under the common law, a stakeholder is entitled to recover its attorney's fees from the deposited funds unless there were no rival claimants or the interpleader was unreasonably delayed.[17]

---

12. The following appeared in the definitions section of the policy:

   **Request.** A written request signed by the person making the request. Such request must be sent to and be in a form acceptable to us.

13. *See* Act of June 6, 1991, 72nd Leg., R.S., ch. 242, § 11.03(8), 1991 Tex. Gen. Laws 1043–45 ("This article shall be liberally construed to promote its underlying purpose which is to obtain prompt payment of claims made pursuant to policies of insurance.") (current version at TEX. INS.CODE § 542.054).

14. *See, e.g.,* Act approved May 2, 1874, 14th Leg., R.S., ch. 145, § 9, 1874 Tex. Gen. Laws 200; Acts of 1879, 16th Leg., R.S., ch. 3, art. 2953, 1879 Tex. Gen. Laws 429; Acts of 1895, 24th Leg., R.S., ch. 3, art. 3071, 1895 Tex. Gen. Laws 592; Act of Mar. 22, 1909, 31st Leg., R.S., ch. 108, § 35, 1909 Tex. Gen. Laws 204, Act of May 2, 1991, 72nd Leg., R.S. ch. 242, § 13.02, 1991 Tex. Gen. Laws 1133 (current version at TEX. INS.CODE § 542.054).

15. *Compare* Act approved May 2, 1874, 14th Leg., R.S., ch. 145, § 9, 1874 Tex. Gen. Laws 200; Acts of 1879, 16th Leg., R.S., ch. 3, art. 2953, 1879 Tex. Gen. Laws 429; Acts of 1895, 24th Leg., R.S., ch. 3, art. 3071, 1895 Tex. Gen. Laws 592; Act of Mar. 22, 1909, 31st Leg., R.S., ch. 108, § 35, 1909 Tex. Gen. Laws 204 (repealed 1909) *with* Act of May 2, 1991, 72nd Leg., R.S. ch. 242, § 13.02, 1991 Tex. Gen. Laws 1133 *and* TEX. INS.CODE § 542.054.

16. *See, e.g., Davis v. East Texas Sav. & Loan Ass'n,* 163 Tex. 361, 354 S.W.2d 926, 930 (1962); *Employers Cas. Co. v. Rockwall County,* 120 Tex. 441, 35 S.W.2d 690, 693 (1931); *Nixon v. Malone,* 100 Tex. 250, 98 S.W. 380, 385 (1906); *Williams v. Wright,* 20 Tex. 499, 502–03 (Tex.1857).

17. *U.S. v. Ray Thomas Gravel Co.,* 380 S.W.2d 576, 581 (Tex.1964); *Davis,* 354 S.W.2d at 930–31; *Greer v. Franklin Life Ins. Co.,* 148 Tex. 166, 221 S.W.2d 857, 861 (1949).

Thus, Texas statutes have long punished insurers for delays beyond 30 days, while the common law punishes them only for unreasonable delays—an unspecified period that depends on the facts of each case. Generally, these two rules have operated in harmony: insurers interpleading within 30 days collected fees consistent with both rules, and those who unreasonably delayed interpleading paid penalties consistent with both.

But in some cases the different standards inevitably overlapped. Thus, for example, in *Great American Reserve Insurance Co. v. Sanders,* an insurer filed its interpleader 37 days after receiving a claim—more than 30 days, but less than an unreasonable delay.[18] As both parties could not collect fees in such cases without partially frustrating both rules, one had to yield. For many years, Texas courts held that the statute must yield to the common law—that an interpleader filed within a reasonable time did not subject the insurer to the statutory penalties regardless of the statutory deadlines.[19]

But in 1991, the Legislature changed the prompt payment statute, raising the penalty interest to 18 percent and the deadline for payment (in most cases) to 60 days.[20] Neither the statute nor the legislative history mention interpleader, or the purpose for the amendments other than those obvious from the facial changes.

For several reasons, we hold that the interpleader exception to the prompt payment statute did not survive the 1991 changes. First and foremost, the statute itself makes no such exception. While we generally presume the Legislature accepts judicial interpretations of a statute by re-enacting it without substantial change,[21] we do not make that presumption when there have been substantial changes,[22] or when it would contradict the statute's plain words.[23] Here, the 1991 amendments made substantial changes, and plainly require an insurer who fails to pay policy proceeds within 60 days to pay penalties

**18.** 525 S.W.2d 956, 959 (Tex.1975).

**19.** *See Sanders,* 525 S.W.2d at 959 (holding insurer not liable for penalties after filing interpleader 7 days after statutory deadline); *Greer,* 221 S.W.2d at 861 (same with interpleader filed almost 1 year after statutory deadline); *Murray v. Am. Nat'l Ins. Co.,* 300 S.W.2d 187, 188 (Tex.Civ.App.-Fort Worth 1957, writ ref'd) (same with interpleader filed 45 days after statutory deadline); *Murray v. Bankers Life Co.,* 299 S.W.2d 730, 733 (Tex. Civ.App.-Fort Worth 1957, writ ref'd) (same with interpleader filed 49 days after statutory deadline); *Clements v. Minnesota Life Ins. Co.,* 176 S.W.3d 258, 264 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (same with interpleader filed 5 days after statutory deadline); *Holmquist v. Occidental Life Ins. Co.,* 536 S.W.2d 434, 437–38 (Tex.Civ.App.-Houston [14th Dist.] 1976, writ ref'd n.r.e.) (same with interpleader filed 61 days after statutory deadline); *Gabler v. Minnesota Mut. Life Ins. Co.,* 498 S.W.2d 413, 416 (Tex.Civ.App.-Texarkana 1973, no writ) (same with interpleader filed more than 1 year after statutory dead-line); *Givens v. Girard Life Ins. Co. of Am.,* 480 S.W.2d 421, 427–28 (Tex.Civ.App.-Dallas 1972, writ ref 'd n.r.e.) (same with interpleader filed 41 days after statutory deadline).

**20.** *See* Act of June 6, 1991, 72nd Leg., R.S., ch. 242, § 11.03(3), (6), 1991 Tex. Gen. Laws 1043–45 (current version at TEX. INS.CODE §§ 542.056, 542.058, 546.060).

**21.** *Wich v. Fleming,* 652 S.W.2d 353, 355 (Tex.1983); *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 187 (Tex.1968).

**22.** *Pub. Util. Comm'n of Texas v. City Pub. Serv. Bd. of San Antonio,* 53 S.W.3d 310, 324 (Tex.2001); *Fleming Foods of Texas, Inc. v. Rylander,* 6 S.W.3d 278, 282 (Tex.1999).

**23.** *Texas Dep't of Protective and Regulatory Servs. v. Mega Child Care, Inc.,* 145 S.W.3d 170, 177 (Tex.2004); *Cities of Austin, Dallas, Ft. Worth, and Hereford v. Southwestern Bell Tel. Co.,* 92 S.W.3d 434, 445 (Tex.2002); *Fleming Foods,* 6 S.W.3d at 282.

too. Creating an exception for interpleaders filed after this deadline would mean simply ignoring the statute in some cases.

Second, prompt payment statutes before 1991 were considered penal in nature and strictly construed.[24] But in the 1991 amendments the Legislature provided that the statute "shall be liberally construed to promote its underlying purpose."[25] While exempting interpleaders might be consistent with a strict construction, it is inconsistent with a liberal one.[26]

Third, compliance with the statute would not frustrate the primary purposes behind interpleader. As already noted, the common-law rule has long punished unreasonable delays by barring recovery of attorney's fees; imposing other penalties too is not inconsistent with that policy. Nor is the Legislature's choice of 60 days at the outer limit for reasonable delay; legislatures generally have the prerogative of setting such bright-line rules, and the vulnerability of insureds justifies special protection in the insurance context.[27] Some delay before filing an interpleader may benefit all concerned, if settlement can be reached before lawyers must be hired and pleadings filed.[28] But given recent increases in avenues for communication and dispute resolution, it is hard to argue that the statute's safe-harbor of 60 days—double the period allowed throughout most of Texas history—is insufficient.

To sum up, continuing to recognize an interpleader exception to the prompt payment statute would frustrate its purpose in some cases, while removing the exception would allow the purposes of both the statute and interpleader to be fulfilled. Accordingly, we hold that State Farm's interpleader did not render the statute inapplicable.

## IV. Does Interpleader Halt the Statutory Penalties?

■ The court of appeals assessed the prompt payment statute's penalties until final judgment was signed almost nine months after State Farm's interpleader.[29] While assessing penalties before interpleader is consistent with both the statuto-

---

24. *Bogart v. Twin City Fire Ins. Co.*, 473 F.2d 619, 626 (5th Cir.1973); *Int'l Sec. Life Ins. Co. v. Redwine*, 481 S.W.2d 792, 793 (Tex. 1972); *McFarland v. Franklin Life Ins. Co.*, 416 S.W.2d 378, 379 (Tex.1967); *Wash. Fid. Nat'l Ins. Co. v. Williams*, 49 S.W.2d 1093, 1094 (Tex. Com.App.1932, holding approved); *Mut. Life Ins. Co. v. Ford*, 103 Tex. 522, 131 S.W. 406, 408 (1910).

25. *See* Act of June 6, 1991, 72nd Leg., R.S., ch. 242, § 11.03(8), 1991 Tex. Gen. Laws 1043–45 (current version at TEX. INS.CODE § 542.054).

26. *See* BLACK'S LAW DICTIONARY 332 (8th ed. 2004) ("Liberal construction ... resolves all reasonable doubts in favor of the applicability of the statute to the particular case.") (quoting William M. Lile et al., BRIEF MAKING AND THE USE OF LAW BOOKS 343 (3d ed.1914)).

27. *See, e.g., Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 52 (Tex.1997).

28. *See Tollett v. Phoenix Assurance Co. of New York*, 147 F.Supp. 597, 603 (W.D.Ark.1956) ("[I]t is not always to the best interest of the claimants to the proceeds of an insurance policy for an interpleader suit to be filed too quickly, particularly in view of the fact that when an insurer does interplead, the fund may be charged with the costs and with an attorney's fee, which might be avoided by the insurer's waiting a reasonable time before filing its bill."); Franklin L. Best, Jr., *Reforming Interpleader: The Need for Consistency in Awarding Attorneys' Fees*, 34 BAYLOR L.REV. 541, 564 (1982) ("The stakeholder's delaying litigation may not only be acceptable, it may be preferable. In particular, delay may be beneficial in increasing the likelihood of amicable settlement and thus in avoiding the expense of litigation.").

29. 174 S.W.3d at 790.

ry and common-law rules, assessing them thereafter is not.

■ When insurers receive notice of adverse bona fide claims, Texas law does not require them "to act as judge and jury," [30] or to pay one claim and risk liability on the other.[31] Instead, if a reasonable doubt exists in law or fact as to whom the proceeds belong, an insurer should interplead them and let the courts decide.[32] "[E]very reasonable doubt should be resolved in favor of the stakeholder's right to interplead." [33]

Assessing penalty interest and attorney's fees after an interpleader is filed would punish insurers for doing exactly what Texas law encourages. Indeed, the more difficult and protracted the dispute between rival claimants (and thus the more justified the interpleader), the larger those penalties would grow. We must avoid construing the prompt payment statute to reach such an absurd result.[34]

The statute itself does not mention interpleader, and only refers to prompt payment of a claim.[35] But as a result of the historical interpleader exception discussed above, it has always been the case that interpleader sufficed in place of payment. While the Legislature's 1991 adoption of a 60–day deadline suggests the courts should not continue imposing a different one, nothing in the 1991 changes suggests the Legislature intended to begin discouraging interpleaders.

Moreover, the purposes behind the statute are advanced by encouraging interpleaders, not punishing them. The statute penalizes insurers who delay payment; an insurer who interpleads is no longer doing so. Thereafter, any delay in payment is the fault of the mistaken claimant, who is not punished by assessing penalties against the insurer. While the statute seeks to get policies paid as quickly as possible, it is not advanced by paying the wrong party, a consequence that interpleader avoids.

Finally, treating interpleader as payment is consistent with our other interpretations of the prompt payment statute. The statute's penalties have always been payable only to those who can recover on a policy,[36] and only to the extent of amounts

---

30. *Great Am. Reserve Ins. Co. v. Sanders,* 525 S.W.2d 956, 959 (Tex.1975).

31. Act of June 13, 1995, 74th Leg., R.S., ch. 535, § 1, 1995 Tex. Gen. Laws 3293 (current version at Tex. Ins.Code § 1103.102(b)) (providing that life insurer's payment to the designated beneficiary "shall discharge the company from all liability under the policy," but only "in the absence of the receipt by it of notice of an adverse claim to the proceeds of the policy from one having a bona fide legal claim to such proceeds").

32. *Sanders,* 525 S.W.2d at 958.

33. *Bryant v. United Shortline Inc. Assurance Servs., N.A.,* 972 S.W.2d 26, 31 (Tex.1998); *Nixon v. Malone,* 100 Tex. 250, 98 S.W. 380, 385 (1906) ("While the circumstance of the case must be such as to place the stakeholder in some real doubt, or hazard to entitle him to

the remedy of interpleading, yet the remedy is so beneficial and so just that any reasonable doubt as to his right to an interpleader will be resolved in his favor.").

34. *Univ. of Texas Southwestern Med. Ctr. at Dallas v. Loutzenhiser,* 140 S.W.3d 351, 356–57 (Tex.2004); *see also* Tex. Gov'T Code § 311.021(3) ("In enacting a statute, it is presumed that ... (3) a just and reasonable result is intended....").

35. *See* Act of June 6, 1991, 72nd Leg., R. S., ch. 242, § 11.03(3), (6), 1991 Tex. Gen. Laws 1043–45 (current version at Tex. Ins.Code §§ 542.056, 542.058, 546.060).

36. *Progressive County Mut. Ins. Co. v. Boyd,* 177 S.W.3d 919, 922 (Tex.2005) ("There can be no liability under article 21.55 if the insurance claim is not covered by the policy."); *Drane v. Jefferson Standard Life Ins. Co.,* 139

"ultimately determined to be owed."[37] Thus, an insurer that tenders part of the policy proceeds must pay penalties only on the remainder,[38] and if the ultimate award is less than the tender no penalties are due at all.[39] Similarly, an insurer that interpleads the entire policy proceeds owes nothing more, and should not have to pay penalties on the presumption that it does.

■ Of course, the same reasoning would not apply when an interpleader has no basis. If there are no rival claims, interpleader merely delays payment and should not toll the statute's penalties.[40] But interpleader is not improper merely because it is delayed; while some courts have listed prompt filing as an interpleader requirement,[41] the rules of procedure require only conflicting claims.[42] When

rival claims exist, courts must decide who gets the proceeds no matter how tardy the deposit;[43] we cannot simply "toss the money back out the clerk's window,"[44] or return it to a stakeholder who makes no claim to it. Thus while delay may bar recovery of attorney's fees and incur the statutory penalties, only the absence of rival claims justifies continuing statutory penalties after interpleader occurs.

Here, the parties agree the prompt payment deadline was 60 days, and State Farm's interpleader was filed 12 days later. Once State Farm interpleaded the entire policy proceeds, it owed nothing more on the policy. Thus, the courts below erred in awarding penalty interest and attorney's fees for more than those 12 days.

Tex. 101, 161 S.W.2d 1057, 1060 (Tex.1942) (holding under predecessor statute, TEX. REV. GEN. STAT. art. 4736, "it is only when the life insurance company is 'liable therefor' (for the amount of the policy) that it can be held for the penalty and attorney's fees").

**37.** *Republic Underwriters Ins. Co. v. Mex–Tex, Inc.,* 150 S.W.3d 423, 426 (Tex.2004).

**38.** *See Mex–Tex, Inc.,* 150 S.W.3d at 427–28 (holding penalty interest under article 21.55 was due only on difference between amount insurer initially tendered and amount ultimately determined to be due).

**39.** *Allstate Ins. Co. v. Bonner,* 51 S.W.3d 289, 292 (Tex.2001) (holding insured was not entitled to penalties under article 21.55 as jury awarded damage less than benefits insurer had already paid).

**40.** *See McFarland v. Franklin Life Ins. Co.,* 416 S.W.2d 378, 380–81 (Tex.1967) (imposing penalties despite interpleader because there were no rival claims).

**41.** *See, e.g., Clements v. Minnesota Life Ins. Co.,* 176 S.W.3d 258, 263 (Tex.App.-Houston [1st Dist.] 2004, no pet.) ("A petitioner in interpleader must prove that he (1) is subject to, or has reasonable grounds to anticipate,

rival claims to the same funds; (2) has not unreasonably delayed in filing the interpleader action; and (3) has unconditionally tendered the funds into the registry of the trial court."); *accord Serna v. Webster,* 908 S.W.2d 487, 491 (Tex.App.-San Antonio 1995, no writ); *Olmos v. Pecan Grove Mun. Util. Dist.,* 857 S.W.2d 734, 741 (Tex.App.-Houston [14th Dist.] 1993, no writ); *Sav. & Profit Sharing Fund of Sears Employees v. Stubbs,* 734 S.W.2d 76, 79 (Tex.App.-Austin 1987, no writ); *cf. Marineau v. Gen. Am. Life Ins. Co.,* 898 S.W.2d 397, 404 (Tex.App.-Fort Worth 1995, writ denied) (citing same three elements as ground for avoiding prompt payment penalties by interpleader).

**42.** *See* TEX. R. CIV. P. 43 ("Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability.").

**43.** *Bryant v. United Shortline Inc. Assurance Servs., N.A.,* 972 S.W.2d 26, 29 (Tex.1998) (holding that interpleader action is *quasi in rem* action giving trial court jurisdiction to disburse funds upon determining ownership).

**44.** *Madeksho v. Abraham, Watkins, Nichols & Friend,* 112 S.W.3d 679, 686 (Tex.App.-Hous-

The court of appeals seemed to believe that larger penalties were required because State Farm should have changed beneficiaries upon receiving Ed's written request.[45] We have at least suggested that an insurer might face liability for processing a change of beneficiary with knowledge of conflicting rights.[46] But in any event, whether State Farm should have *added* Toni as beneficiary is not the same question as whether it should have *paid* her. Again, in *Great American Reserve Insurance Co. v. Sanders*, we held interpleader was proper when a current wife questioned whether the named beneficiary (a former wife) should be paid on a policy purchased with community funds.[47] That the answer ultimately turned out to be "Yes" did not make interpleader any more improper than it was here.

In this case, Linda unquestionably had not received all the alimony she was due, and the divorce agreement unquestionably prohibited Ed from dropping her as named beneficiary on his policies to that extent. While Linda and Toni ultimately agreed to impose a constructive trust to protect Linda's interest, State Farm could not impose such a settlement on them. Moreover, its right to interpleader "must be determined by the conditions existing at the time of the filing,"[48] not several months later when Linda released her claim, or several years later when Lisa released hers. Even assuming State Farm erred in not changing Ed's beneficiary immediately, it properly filed an interpleader after receiving adverse bona fide claims.

## V. Does Interpleader Halt Prejudgment Interest?

■ Finally, State Farm argues the trial court erred by assessing not only penalty interest but prejudgment interest at 6 percent after its interpleader was filed. Once funds are deposited into the registry, they are "held in trust for the litigant who establishes his right thereto," and interest accrues to its ultimate owner.[49] Allowing Toni to recover interest on proceeds in the registry and interest from State Farm at the same time would constitute a double recovery. Accordingly, the trial court erred in assessing prejudgment interest against State Farm after the interpleader.[50]

## VI. Conclusion

Accordingly, we hold that Toni is not entitled to prejudgment interest, penalty interest, or attorney's fees incurred after State Farm filed its interpleader. We reverse the court of appeal's judgment, and remand to the trial court for redetermination of interest and attorney's fees in accordance with this opinion.

ton [14th Dist.] 2003) (en banc plurality opinion).

**45.** *See* 174 S.W.3d at 787–88.

**46.** *See Nixon v. Malone*, 100 Tex. 250, 98 S.W. 380, 386 (Tex.1906) (holding insurers not liable for defrauding creditors as they changed designated beneficiary "without any information or notice of any kind that [others] had or claimed any rights in connection with the policy.").

**47.** 525 S.W.2d 956, 958–59 (Tex.1975).

**48.** *Greenwall v. Ligon*, 14 S.W.2d 829, 833 (Tex.1929).

**49.** *Sellers v. Harris County*, 483 S.W.2d 242, 243 (Tex.1972).

**50.** *See Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 369–70 (5th Cir.1975) (holding that interest should not be accessed after interpleader filed and promise to pay made).