Opinion issued July 23, 2009



















In The
Court of Appeals
For The
First District of Texas




NO. 01-07-01036-CV
____________

W. NEIL COBB, Appellant

V.

JOHNNY B. MORACE AND GEO-LAB, INC., Appellees
 

 
 
On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2006-19496
 

 
 
MEMORANDUM OPINION
          In this limited appeal,


 appellant, W. Neil Cobb, challenges certain portions of
the trial court’s final judgment, which it rendered in response to the Motion for Entry
of Final Judgment filed by appellees, Johnny B. Morace and Geo-Lab, Inc. (“Geo-Lab”), after the parties had entered into a Mediated Settlement Agreement (“MSA”)
in Morace’s underlying suit against Cobb to enforce Cobb’s agreement to sell to
Morace the stock of Geo-Lab. In six issues, Cobb contends that the trial court erred
in ordering that payments to Cobb for the Geo-Lab stock would begin ninety days
from the date that the judgment became final, not requiring Morace and Geo-Lab to
fulfill their obligation under the MSA to execute certain documents, not awarding
attorney’s fees and pre-judgment interest to Cobb, taxing all costs against Cobb, and
not declaring whether the MSA resolved another dispute between Cobb and Morace.
          We affirm in part and reverse and remand in part.
Factual and Procedural Background
          In his second amended petition, Morace alleged that since 1996, he had been
in charge of the operations of Geo-Lab. In December 2005, after Cobb had agreed
to sell to Morace his interest in Geo-Lab, Morace had drafted a Stock Sale Agreement
(“SSA”), a two-paragraph document that Cobb and Morace signed on March 22,
2006. On March 23, 2006, Cobb sent Morace a letter stating that he was “rescinding
the document signed on March 22, 2006” and “withdrawing any other offer, oral or
written, concerning the sale of” his interest in Geo-Lab. 
          Morace further alleged that Cobb had breached the SSA and caused Morace to
rely on representations that Morace could purchase Cobb’s stock in Geo-Lab and
operate the company. He also asserted that Cobb was liable to Geo-Lab for using
“Geo-Lab funds on many occasions as his personal piggy bank” and converting
$100,000 from Geo-Lab. Morace also sought a declaratory judgment “regarding [his]
rights” under the SSA.
          In Cobb’s first amended counter-claim, he sought a declaratory judgment that,
under the SSA, Cobb owned all outstanding stock in Geo-Lab until Morace paid for
the stock, “in which event the ‘stock would be transferred as paid yearly.’” Cobb also
sued Morace for breach of contract, breach of his fiduciary duty to Geo-Lab, and
attorney’s fees. 
          In February 2007, the parties participated in mediation and entered the MSA,
which includes the following terms and conditions:
1. Neil Cobb (“Cobb”) agrees to sell all of his right title and interest
and shares in and to Geo-Lab, Inc. (“Geo-Lab”) to Johnny B.
Morace (“Morace”). At the option of Morace (after consultation
with his CPA) the stock may be redeemed by Geo-Lab on the
terms as set out herein. In the event Geo-Lab elects to redeem the
stock, Morace shall guaranty the repayment by Geo-Lab.
 
2. The purchase price for the stock is $1,850,000.00. (the “Purchase
Price”).
 
3. The Purchase Price shall be paid as follows:
 
a. In equal quarterly payments beginning on May 9,
2007 and continuing quarterly thereafter until on or
before February 9, 2017 at an interest rate of 5.75%
per annum.
 
. . . .
 
5. Cobb will continue to get an annual salary of $120,000.00 per
year for a period of six (6) years from March 22, 2006. In
addition, Geo-Lab will continue making payments on Cobb’s
Ford F-350 until it is paid in full at which time title will be
transferred to Cobb. Also, until the note on the Ford F-350 is
paid, Geo-Lab shall pay Cobb’s reasonable gas, repairs, cell
phone and EZ tag payment. Thereafter, Cobb will receive
$500.00 per month car allowance for the same term as his salary. 
As an additional benefit Geo-Lab will continue to pay the four
life insurance premiums currently paid by Geo-Lab for the term
Cobb receives salary. At such time as the SBA note is paid, the
obligation on the two (2) policies that are collateral for the SBA
note will cease.
 
6. Cobb is authorized to deposit the three checks in his possession
from Geo-Lab to Cobb each in the amount of approximately
$49,000.00. The loan from Cobb to Geo-Lab in the approximate
amount of $109,000.00 shall be deemed paid in full. Geo-Lab
will reissue the checks if necessary.
 
. . . .
 
8. Effective upon the execution of all settlement documents, Neil
Cobb hereby resigns his position as an officer and/or director of
Geo-Lab.
 
9. The parties will exchange more complete documents, and mutual
releases of any and all claims, whether known or unknown.
 
10. Counsel for Morace will draft a Full and Final Settlement
Agreement and Release incorporating the terms hereof and
provide a draft within three (3) business days of the date hereof. 
Counsel for Cobb will draft a Promissory Note and Security
Agreement incorporating the terms hereof and other reasonable
terms and provide the draft within three (3) business days of the
date hereof. The parties shall use their best efforts to execute all
settlement documents in no more than seven (7) business days.
 
11. The parties will file an agreed motion to dismiss, with prejudice,
the lawsuit on the later of (i) ten (10) days of the date hereof or
(ii) within three (3) days of execution of the Full and Final
Settlement Agreement. 
(Emphasis added.) Before the parties could file a motion to dismiss the case, a
dispute arose about the implementation of the MSA. 
          Morace filed a supplemental petition, alleging that Cobb had breached the
MSA by “refusing to sign the Final Settlement and Release documents” and “failing
to use his best efforts to execute all settlement documents within seven (7) business
days of February 9, 2007.”
          Cobb also filed a supplemental petition, alleging that Morace had breached the
MSA by not paying him “salary” as required by paragraph 5 of the MSA,
“[withholding] several paychecks from Cobb, terminat[ing] Cobb’s cell phone, and
threaten[ing] to discontinue payments of over $600,000 in Paragraph 5
Compensation.” Cobb also alleged that since selling to Morace his interest in an
unrelated company, DC Oilfield Services (“DC”), Cobb had learned that Morace had
falsified DC’s financial records. In his request for declaratory judgment, Cobb
asserted that under the MSA “Morace/Geo-Lab are required to pay all Paragraph 5
Compensation to Cobb and that such payments may not be terminated or discontinued
for any reason.” Cobb further asserted that the release in paragraph 9 of the MSA did
“not extend to or release any claims Cobb may have [had] arising from Morace’s
falsification of the DC financial records.” 
          In May 2007, Cobb filed a summary judgment motion, in which he argued that
the trial court should award him salary payments because the “annual salary”
provided for in paragraph 5 of the MSA is an unconditional payment which is paid
as a secured debt. Cobb contended that Morace did not have the right “to terminate
Cobb and thereby forfeit the Paragraph 5 Compensation.” In Morace’s response, he
asserted that “a genuine issue of material fact exist[ed] regarding the intent of the
parties,” “the term ‘salary’ means that Mr. Cobb is required to work to earn this
money,” and Cobb’s summary judgment motion was based on inadmissible evidence.
          Morace also filed a summary judgment motion, in which he argued that
although the MSA “called for Cobb to receive an ‘annual salary’ of $120,000 for six
years,” Cobb was not entitled to payment because he had refused to work for his
salary. Morace contended that the trial court should declare the MSA unambiguous,
“interpreting the word salary by its plain meaning,” and enforce the MSA by
“requiring Cobb to sign the Full and Final Compromise Release and Settlement
Agreement and [other] ancillary documents. . . .” Morace asserted that if the trial
court found the MSA to be unambiguous, it should incorporate the terms of the
settlement into a final judgment.
          The trial court granted Cobb’s summary judgment motion and held that,
according to paragraph 5 of the MSA, the “salary” payments “could not be terminated
or discontinued for any reason.” 
          Morace then filed his Motion for Entry of Final Judgment, to which he attached
his proposed final judgment. Morace noted that the trial court had asked the parties
to submit a proposed final judgment incorporating the court’s earlier ruling on the
“salary” payments. Cobb filed a written objection to Morace’s proposed final
judgment, contending that it asked the trial court to rewrite the MSA and grant relief
“for which there are no party pleadings or proof.” The trial court signed the proposed
final judgment, which states, in relevant part:
Plaintiffs and Defendants filed cross-motions for Summary
Judgment. After considering the motions, the evidence, the responses
and the arguments of counsel. The Court is of the opinion that judgment
should be entered incorporating the law of the settlement agreement
between the parties.
 
The Court finds that the parties entered into a mediated Settlement
Agreement. The Mediated Settlement Agreement executed by the
parties on February 6, 2007 is unambiguous and enforceable as written. 
The Court finds that under the mediated Agreement in dispute that Geo-Lab, Inc. is required to pay all compensation to Neil Cobb which is set
forth in paragraph 5 of the Mediated Agreement dated February 9, 2007
and that the payments may not be terminated or discontinued for any
reason. The Court further finds that the terms of the Mediated
Settlement Agreement should be incorporated into this Final
Judgment . . . .
The remainder of the final judgment contains a revised version of the MSA, and it
concludes with the statement, “All relief requested that is not set out herein is denied. 
Costs of court are taxed against Defendant. This is a final judgment.”
          Cobb then filed a motion for new trial and motion to vacate, modify, and
correct the judgment. After the trial court denied these motions, Cobb filed his notice
of limited appeal and requested a “partial reporter’s record.” See Tex. R. App. P.
34.6(c)(1). 
Waiver
          As a preliminary matter, Morace argues that Cobb has waived his appeal
because he has voluntarily accepted the benefits of the judgment by accepting
“salary” payments and two quarterly payments for Geo-Lab stock.
          It is generally true that a party cannot voluntarily accept the benefits of a
judgment and then “prosecute an appeal therefrom.” McCartney v. Mead, 541
S.W.2d 202, 205 (Tex. App.—Houston [1st Dist.] 1976, no writ). However, when
“reversal of a judgment will not reduce the benefits which the appealing party has
secured thereby,” this rule does not apply. Id. (citing Carle v. Carle, 234 S.W.2d
1002, 1004 (Tex. 1950)).
          Although Cobb has accepted “salary” payments and two quarterly payments
for Geo-Lab stock, Morace agreed to make these payments in the MSA, which, as
both parties agree, is a valid, enforceable contract. The parties’ only dispute about
these payments has already been disposed of through an unappealed order of the trial
court, rendered in response to cross-motions for summary judgment. Even without
the trial court’s final judgment, Cobb was entitled to these payments under the MSA. 
Reversal of the challenged portions of the trial court’s judgment would not reduce the
benefits that Cobb has secured. See id.
          Accordingly, we hold that Cobb has not waived his right to appeal.
Modification of the MSA
          In his first and second issues, Cobb argues that the trial court erred in entering
the portions of its final judgment concerning the beginning date of quarterly payments
and execution of certain documents because these portions of the final judgment do
not conform to the MSA. Morace contends that the trial court properly incorporated
the essential terms of the MSA into the final judgment.
          A trial court may incorporate terms from a settlement agreement into a final
judgment. Tex. Civ. Prac. & Rem. Code Ann. § 154.071(b) (Vernon 2005). 
However, a final judgment founded upon a settlement agreement must be in “strict
or literal compliance” with that agreement. Vickrey v. Am. Youth Camps, Inc., 532
S.W.2d 292, 292 (Tex. 1976); see Beyers v. Roberts, 199 S.W.3d 354, 362 (Tex.
App.—Houston [1st Dist.] 2006, pet. denied). A final judgment does not strictly
comply with a settlement agreement when the trial court’s judgment adds terms,
significantly alters the original terms, or undermines the intent of the parties. Beyers,
199 S.W.3d at 362; see also In re Marriage of Nolder, 48 S.W.3d 432, 434–35 (Tex.
App.—Texarkana 2001, no pet.); Keim v. Anderson, 943 S.W.2d 938, 946 (Tex.
App.—El Paso 1997, no pet.); In re Marriage of Ames, 860 S.W.2d 590, 592–93
(Tex. App.—Amarillo 1993, no writ). In its judgment, a trial court may modify the
terms of a settlement agreement, but only insofar as the modification does not add
terms, significantly alter the original terms, or undermine the parties’ intent. See
Beyers, 199 S.W.3d at 363 (holding that trial court could modify term in settlement
agreement when performance of term was impossible); In re Marriage of Nolder, 48
S.W.3d at 434–35 (holding that trial court properly modified settlement agreement
awarding party 55% of stock options’ cash value when stock options had been
exercised after party signed settlement agreement for 55% of stock options). 
Beginning Date of Quarterly Payments
          Cobb first complains that although the MSA required Morace to begin making
quarterly payments to Cobb on May 9, 2007, the judgment did not require that the
quarterly payments begin until “90 days after the judgment” became final. Cobb
asserts that under the trial court’s judgment, and contrary to the specific terms of the
MSA, Morace was not required to make his first quarterly payment until March 4,
2008, “over a year after Morace had asserted financial control over the profits of Geo-Lab.”



          Pursuant to the MSA, Morace should have begun sending quarterly payments
to Cobb on May 9, 2007, ninety days after the parties had signed the MSA. However,
Cobb had refused to execute settlement documents drafted by Morace. As a result of
this and other disputes, the trial court incorporated the MSA into its judgment and
required that Morace begin making payments ninety days after the judgment became
final instead of ninety days after the MSA had been signed. However, the trial court
did not alter the amount that Morace owed, the frequency of the payments, or the
“interest rate of 5.75% per annum” on the payments. Although the trial court
modified the date on which the quarterly payments to Cobb would begin, this
modification did not significantly alter the original terms of the MSA or undermine
the intent of the parties.
          Accordingly, we hold that the trial court did not err in requiring that the
quarterly payments to Cobb begin ninety days after the judgment became final.
          We overrule Cobb’s first issue.
Guaranty, Security Agreement, and Promissory Note
          In his second issue, Cobb argues that the trial court erred in not requiring that
Morace “execute guaranty and security agreements, promissory notes, and other
documents” because Cobb “fully financed” the settlement transaction and the MSA
required that Morace execute these documents. Morace contends that the trial court
“expressly incorporated Morace’s payment obligations under the Mediated Settlement
Agreement into Paragraphs 2 and 3 of the Final Judgment.”
          The MSA provides,
1.. . . . At the option of Morace (after consultation with his CPA)
the stock may be redeemed by Geo-Lab on the terms set out
herein. In the event Geo-Lab elects to redeem the stock, Morace
shall guaranty the repayment by Geo-Lab.
 
. . . .
 
4.The Purchase Price shall be memorialized in a Promissory Note
from the party purchasing the stock and secured by a pledge of
the purchased stock and the assets of Geo-Lab, Inc. which shall
be in a security agreement more fully set out by the parties
incorporating customary commercial terms, including but not
limited to reasonable access to Geo-Lab’s financial statements
(the “Security Agreement”). Unless there is a default under the
pledge agreement, Morace shall have all rights attendant to
ownership of the stock of Geo-Lab. Such Security Agreement
shall also secure the obligations relating to compensation in
Paragraph 5 below. Any security interest shall be subordinate to
the security interest of Washington Mutual relating to the Small
Business Administration loan. The Maker of the Note shall have
the right to pre-pay the note (i) at any time after five (5) years, (ii)
with Cobb’s consent, or (iii) upon the sale of Geo-Lab to an
unaffiliated third party that is not owned or controlled directly or
indirectly by Morace.
(Emphasis added.) However, the trial court excluded all of the above language from
its judgment with the exception of the following:
2.Morace shall have the right to pre-pay the Purchase Price (i) at
any time after five (5) years, or (ii) with Cobb’s consent, or (iii)
upon the sale of Geo-Lab to an unaffiliated third party that is not
owned or controlled directly or indirectly by Morace.
 
3.Cobb shall have a security interest in the assets of Geo-Lab, Inc.
to secure repayment of the Purchase Price.
Unlike the MSA, the judgment does not require Morace to guaranty the repayment
by Geo-Lab in the event that Geo-Lab redeems the stock. The judgment does not
require Morace to memorialize the purchase of Cobb’s stock in a promissory note. 
Finally, the judgment does not give Cobb a security interest in the stock of Geo-Lab.
          Accordingly, we hold that the trial court erred in significantly altering the
original terms of the MSA by excluding the portion of the MSA securing the
quarterly payments with purchased stock and requiring a guaranty, promissory note,
and security agreement. See Beyers, 199 S.W.3d at 362.
          We sustain Cobb’s second issue.Unaddressed Claims
          In his third and fifth issues, Cobb argues that the trial court erred in rendering
a final judgment that disposed of his claims for attorney’s fees and a declaratory
judgment because these claims had not been presented to the trial court in a summary
judgment motion. Regarding Cobb’s claim for attorney’s fees, Morace asserts that
“Cobb did not present any evidence to the Trial Court establishing the reasonableness
or necessity of any amount claimed for attorney’s fees” and that the trial court “had
an equitable basis to determine that no fees should be awarded to either side.” 
Morace argues that Cobb’s claim for a declaratory judgment was untimely because
“Cobb filed this pleading in August of 2007 after the Trial Court had advised the
parties that it intended to enter a final summary judgment. . . .”
          An order is final and appealable whenever a trial court clearly indicates its
intention to render a final, appealable judgment. See Lehmann v. Har-Con Corp., 39
S.W.3d 191, 204 (Tex. 2001). So, an “order can be final and appealable when it
should not be.” Id. For example, when a trial court grants a summary judgment
motion that addressed all of a party’s claims when it was filed but does not address
claims timely added by amendment after the motion was filed, the order is “reversible,
but not interlocutory” so long as it “state[s] unequivocally that final judgment is
rendered.” Id. Rendering final judgment on claims that neither party has presented
to the trial court in a summary judgment motion is reversible error. See id.; Chessher
v. Sw. Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983) (per curiam) (holding that
unaddressed claims cannot be basis for summary judgment). Summary judgment may
only be rendered on “issues expressly presented to the trial court by” conclusive proof
of all essential elements of the cause of action, or defense, as a matter of law. Id.
(quoting City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.
1979)). When claims have not been presented to a trial court in a motion for
summary judgment, the trial court errs in rendering judgment on those claims. Id. 
Cobb’s Claim for Attorney’s Fees
          Here, both Morace and Cobb had supplemented their pleadings, alleging that
the other party had breached the MSA and requesting attorney’s fees as a result of the
other party’s breach of the MSA. See Mantas v. Fifth Court of Appeals, 925 S.W.2d
656, 658 (Tex. 1996) (stating that party seeking enforcement of settlement agreement
“must pursue a separate breach-of-contract claim, which is subject to the normal rules
of pleading and proof”). In order to prove breach of contract, each party had to prove
that (1) the MSA was a valid, enforceable contract; (2) the party performed or
tendered performance of his obligations under the MSA, (3) the other party breached
the MSA, and (4) the party suffered damages resulting from the other party’s breach. 
See Wright v. Christian & Smith, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st
Dist.] 1997, no writ). 
          Neither party moved for summary judgment on its claim for attorney’s fees
resulting from the other party’s breach of the MSA. Nevertheless, the trial court
rendered a final judgment stating that “all relief requested that is not set out herein is
denied.” In doing so, the trial court improperly denied Cobb’s claim for attorney’s
fees because that issue was not expressly presented to the trial court in any summary
judgment motion. See Chessher, 658 S.W.2d at 564 (quoting Clear Creek Basin
Auth., 589 S.W.2d at 678). 
          Accordingly, we hold that the trial court erred in rendering a final judgment on
Cobb’s claim for attorney’s fees when neither party had presented this claim to the
trial court in a summary judgment motion.
          We sustain Cobb’s third issue.
Cobb’s Claim for Declaratory Judgment
          Before the trial court rendered judgment, Cobb, in his first supplemental
petition, had also added a claim for a declaratory judgment regarding whether the
MSA released Morace from “any claims Cobb may have arising from Morace’s
falsification of the DC financial records.”


 Cobb asserted that he had previously sold
his interest in DC to Morace. In the agreement governing the sale of DC, Morace
made “specific financial disclosures which were intended to induce Cobb into selling
his ownership interest.” Cobb alleged that after the sale of DC, he had become aware
that Morace had falsified the financial records of DC. 
          Neither Cobb nor Morace presented the declaratory judgment claim to the trial
court in a summary judgment motion. Nevertheless, the trial court rendered a final
judgment stating that “all relief requested that is not set out herein is denied.” In
doing so, the trial court denied Cobb a declaratory judgment regarding his DC claims
even though the issue had not been expressly presented to it in a summary judgment
motion. Chessher, 658 S.W.2d at 564 (quoting Clear Creek Basin Auth., 589 S.W.2d
at 678). 
          Accordingly, we hold that the trial court erred in rendering a final judgment on
Cobb’s claim for a declaratory judgment regarding his DC claims when neither party
had presented these claims to the trial court in a summary judgment motion.
          We sustain Cobb’s fifth issue.
InterestIn his fourth issue, Cobb argues that trial court erred in not awarding pre-judgment interest


 because the issue was not addressed in Morace’s summary
judgment motion. He requests that this Court “permit Cobb recovery of interest for
his breach of contract and on his other claims.”
          We review a trial court’s decision regarding pre-judgment interest using an
abuse-of-discretion standard. Clements v. Minn. Life Ins. Co., 176 S.W.3d 258, 264
(Tex. App.—Houston [1st Dist.] 2004, no pet.), overruled on other grounds by, State
Farm Life Ins. Co. v. Martinez, 216 S.W.3d 799, 804 n.19 (Tex. 2007). Although a
trial court may award pre-judgment interest under the authority of a statute or under
an equitable theory, a trial court has discretion to choose not to award pre-judgment
interest. Id. at 264–65; see Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,
962 S.W.2d 507, 528 (Tex. 1998). Accordingly, we hold that the trial court did not
err in denying pre-judgment interest to Cobb.
          We overrule Cobb’s fourth issue.
Court Costs Taxed Against Cobb
          In his sixth issue, Cobb argues that the trial court erred in taxing all costs
against him because he was the prevailing party. However, in order to make this
complaint on appeal, Cobb was required to present it to the trial court. See Tex. R.
App. P. 33.1(a). A review of the record reveals no motion or objection regarding the
trial court’s decision to tax all court costs against Cobb. Accordingly, we hold that
Cobb has waived this issue for our review. See id.
          We overrule Cobb’s sixth issue.
 
 
 
 
 
Conclusion
          We affirm the challenged portions of the trial court’s judgment requiring that
the quarterly payments to Cobb for Geo-Lab stock begin ninety days after the
judgment became final, denying pre- and post-judgment interest to Cobb, and taxing
all court costs against Cobb. We reverse the portion of the trial court’s judgment
which, by omitting material language in paragraphs 1 and 4 of the MSA,


 does not
strictly comply with the MSA, and we remand this issue to the trial court so that it can
render a partial judgment that incorporates these terms in strict or literal compliance
with the MSA.


 See Vickrey, 532 S.W.2d at 292; Beyers, 199 S.W.3d at 362. We
reverse the portion of the trial court’s judgment that denies Cobb’s claims for
attorney’s fees and for declaratory judgment regarding his DC claims and remand
these issues to the trial court so that these claims may be expressly presented to and
considered by the trial court.


 See Chessher, 658 S.W.2d at 564.
 
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Justices Jennings, Hanks, and Bland.